Gary HILLIARD, Plaintiff,

v.

NEW JERSEY ARMY NATIONAL
GUARD, et al., Defendants.

Civ. A. No. 79-3174.

United States District Court,
D. New Jersey.

May 12, 1981.

Martin & Hart, East Orange, N. J. by Arthur N. Martin, Jr., East Orange, N. J., for plaintiff.

John J. Degnan, Atty. Gen. of N. J., Trenton, N. J. by Thomas F. Marshall, Deputy Atty. Gen., Trenton, N. J., for defendants New Jersey Army Nat. Guard, Brigadier General Peter Amodio and Major General Wilfred C. Menard, Jr.

Schneider, Schneider & Balt, Teaneck, N. J. by Peter D. Ciancia, Teaneck, N. J., for defendants Township of Teaneck, Werner Schmid, Joseph Kilmurray and Brian Burke.

## OPINION

MEANOR, District Judge.

Plaintiff brings this action pursuant to the Civil Rights Act of 1866, as amended, 42 U.S.C. §§ 1983, 1985; the Veteran's Reemployment Rights Act, 38 U.S.C. § 2021 *et seq.* (hereinafter "VRRA") and the U.S. Const. amend. XIV, seeking declaratory judgment of his rights thereunder, back pay and vacation pay.

Jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343(1) and 38 U.S.C. § 2022.

Defendants now move for summary judgment or, in the alternative, dismissal of this action as to New Jersey Department of Defense's Chief of Staff, Major General Wilfred C. Menard, Jr.; Deputy Chief of Staff, Brigadier General Peter Amodio; Township of Teaneck Police Department; Teaneck Police Department's Chief of Police Joseph Kilmurray; Police Captain Brian Burke; Teaneck Township Manager Werner Schmid; New Jersey Army National Guard and the Township of Teaneck.

## I. FACTUAL BACKGROUND

Plaintiff was initially employed by the Township of Teaneck as a police officer in February 1974. In 1977, while so employed, plaintiff joined the New Jersey Army National Guard (hereinafter "NJANG"). On numerous occasions, plaintiff requested military leave from the Police Department in order to attend NJANG Officer Candidate School. Plaintiff sought the Township's permission before applying for active duty training because it has been the policy of the NJANG for the last ten years to require a public employee to obtain the consent of his employer before directing the Guard member to active duty, for training or for other purposes, so as to minimize interference with the activities of local government. (NJANG Reg. 351–2)

The Township regularly refused permission;[1] nevertheless, on one occasion NJANG ordered plaintiff to officer candidate school at the completion of which he was commissioned as Second Lieutenant.

Plaintiff returned to the police force and early in 1979 asked Teaneck for a military leave of absence in order to attend a special training course given at Fort Belvoir, Virginia which would last three and one-half months. The Township denied this request.

Plaintiff then formed the American Scene Corporation naming himself as the sole incorporator, stockholder and owner. He then reapplied to NJANG for the training course at Fort Belvoir listing the American Scene Corporation as his sole employer. Unaware that plaintiff was still an employee of the Teaneck Police Department, NJANG issued orders to plaintiff on April 4, 1979, directing him to report for full-time training duty at Fort Belvoir, Virginia for the period May 13, 1979 to August 22, 1979 (102 days). Plaintiff sent a copy of his orders to the Police Department which was received on May 10, 1979 and reported for duty at Fort Belvoir on May 13, 1979.

On May 15, 1979, Joseph Kilmurray, Chief of the Teaneck Police Department, wrote to Major General Wilfred Menard, Jr., Chief of Staff of the New Jersey Department of Defense, to find out why the Police Department was not contacted for permission in accordance with NJANG policy. In response, General Menard stated that plaintiff's orders were issued on the basis of his application in which he did not list the Township of Teaneck as an employer.

Taking the position that plaintiff was absent without leave from the Police Department, Chief Kilmurray wrote to plaintiff on May 31, 1979 ordering him to return to his job or face dismissal from the police force. Plaintiff was also asked to resign from the Department. Plaintiff responded by letter on June 8, 1979 stating that he intended to return to his position in the police force on August 23, 1979. Plaintiff was then notified by the Teaneck Police that he would be carried on its records as being on leave of absence without pay until he returned to the police force.

While on Guard duty at Fort Belvoir, plaintiff was recruited to commence active duty with the regular Army in an engineering capacity with the Army Corps of Engineers. Members of the National Guard are required to obtain a conditional release from their state headquarters before they can begin active duty with the regular Army.

Plaintiff was issued orders on July 12, 1979 ordering him to active duty for two years, less training time served, to commence on September 10, 1979. On August 1, 1979, however, these orders were revoked.

According to Brigadier General Peter R. Amodio, Deputy Chief of Staff of the New Jersey Department of Defense, who reviewed the entire sequence of events with Major General Menard, it was decided that plaintiff be given the opportunity to correct his employment misrepresentation on his February 1979 application by effectuating a retroactive resignation from the Teaneck Police Department; such resignation to be a precondition to plaintiff's release to the Army Corps of Engineers.

Plaintiff was thus faced with a career choice. Either he completed his active duty training with NJANG and returned to the Police Department, or he resigned from the Police Department and joined the Army Corps of Engineers. By letter dated August 4, 1979, plaintiff submitted his resignation to Werner Schmid, Teaneck's Township Manager, to be considered retroactively effective from May 13, 1979.[2] Two days la-

---

1. The Police Department did allow plaintiff to fulfill his two week summer camp duty from August 18, 1978 to September 1, 1978 but plaintiff claims that his requests were denied on twenty-one occasions.

2. The August 4, 1979 letter stated:

I am Patrolman Gary E. Hilliard of the Teaneck Police Dept. I desire to serve on Active Duty with the Army Corps of Engineers from 23 August 1979 until 9 May 1981. At this time I submit my resignation to the Teaneck

ter, on August 6, 1979, plaintiff submitted a handwritten letter to Mr. Schmid which stated:

> This is to clarify my resignation dated 4 August 1979. I resign as any patrolman that desires to stop working for Teaneck and start working someplace else. I can not make it any plainer than that. I have already handed in my gun and shields to Lt Finn.
>
> Now would you please accept my resignation and let me go?

On August 3, 1979, Mr. Schmid accepted plaintiff's resignation, effective May 13, 1979, and on August 17, 1979 plaintiff was issued orders to serve with the Army Corps of Engineers from August 23, 1979 to May 1981. Plaintiff is presently serving with the Army in Los Angeles, California.

## II. INDIVIDUAL DEFENDANTS

■ In order to state a claim for relief pursuant to Civil Rights Act sections 1983 and 1985, a plaintiff must set forth, *inter alia*, specific conduct by the State, or its officials acting under color of State law, which violates a constitutional right of the plaintiff. *Gittlemacker v. Prasse*, 428 F.2d 1, 3 (3d Cir. 1970).

In *Scott v. University of Delaware*, 385 F.Supp. 937, 944 (D.Del.1974), the court stated:

> In the Third Circuit, it is a settled principle that cases brought pursuant to 42 U.S.C. § 1983 must be specifically pleaded in order to withstand a motion to dismiss. *Kauffman v. Moss*, 420 F.2d 1270, 1275 & n. 13 (3rd Cir.), *cert. denied* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); *Negrich v. Hohn*, 379 F.2d 213 (3rd Cir. 1967). Broad, conclusory allegations unsupported by specific factual allegations which implicate particular defendants are not sufficient to state a claim upon which relief may be granted. *Id.*, at 215. These principles apply with equal force to

actions brought pursuant to 42 U.S.C. § 1985, *Fletcher v. Hook*, 446 F.2d 14 (3rd Cir. 1971), and 42 U.S.C. § 1981, cf. *Kauffman v. Moss*, 420 F.2d at 1275.

■ Although given a period of extension in which to supplement his factual contentions,[3] plaintiff was unable to substantiate allegations that defendants Amodio and Menard deprived him of his protected rights. Plaintiff alleges no more than the rendering of a policy determination by the Chief and Deputy Chief of Staff which enabled him to continue on active duty in spite of his fraudulent procurement of orders.

Similarly, Police Chief Kilmurray, Captain Burke, and Township Manager Schmid have not been factually linked to this action. There are no facts which substantiate the existence of a conspiracy by these individuals together, or in combination with any other entity, in hinderance of plaintiff's constitutional or statutory rights, or for the purpose of forcing his resignation.

The Pretrial Order specifies that, "failure to file a supplemental factual statement will result in plaintiff's being precluded from offering additional proofs...."

Plaintiff failed, and is now precluded from endeavoring to keep alive an action against these individuals which has no merit or factual support.

■ Further, it is clear that the noncorporate, Township of Teaneck Police Department is not a separate entity subject to suit, *see* 3 McQuillin Municip. Corps. § 12.40 (3d Ed. 1973); *Braxton v. Nat'l Capital Housing Auth.*, 396 A.2d 215 (D.C.App.1978), and is not properly named in this action.

For these reasons, dismissal of the Police Department is warranted as is summary judgment with regard to the above mentioned individual defendants.

---

Police Dept to conform with whatever requirements must be met in order to resign in good standing. I allow you the opportunity to make my resignation effective as of my starting Active Duty for Training date 13 May 79.

3. See Pretrial Order, U.S. Magistrate Serena Perretti, at 3 (D.N.J. filed March 4, 1980).

## III. THE NEW JERSEY ARMY NATIONAL GUARD

■ The New Jersey Army National Guard must be dismissed from this suit since the eleventh amendment bars suits against the State unless the State has given its consent or there has been a waiver of its immunity. *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 56 L.Ed.2d 1114 (1978). The New Jersey Army National Guard is not imbued with the same characteristics as local governing bodies which, under *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), are "persons" subject to liability under § 1983 and thus are not wholly immune, unlike the National Guard, from § 1983 suits.

No consent has been given. *See Ritchie v. Cahall*, 386 F.Supp. 1207 (D.C.N.J.1974). As to waiver, section 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the states, nor does it have a history which focuses directly on the question of state liability or shows that Congress considered and firmly decided to abrogate the eleventh amendment of the states. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Thus, there has been no waiver of eleventh amendment immunity. Plaintiff's suit, therefore, against the New Jersey Army National Guard must be dismissed.

## IV. THE TOWNSHIP OF TEANECK

### a. Reemployment

■ Any claim to reemployment that plaintiff may have against the Township of Teaneck is premised upon 38 U.S.C. § 2024(b)(1):

> Any person who, after entering the employment on the basis of which such person claims restoration or reemployment, enters upon active duty (other than for the purpose of determining physical fitness and other than for training), whether or not voluntarily, in the Armed Forces of the United States or the Public Health Service in response to an order or call to active duty shall, upon such person's relief from active duty under honorable conditions, be entitled to all of the reemployment rights and benefits provided for by this chapter in the case of persons inducted under the provisions of the Military Selective Service Act (or prior or subsequent legislation providing for the involuntary induction of persons into the Armed Forces), if the total of such active duty performed between June 24, 1948, and August 1, 1961, did not exceed four years, and the total of any such active duty, additional or otherwise, performed after August 1, 1961, does not exceed four years (plus in each case any additional period in which such person was unable to obtain orders relieving such person from active duty).

Plaintiff voluntarily entered upon active duty in response to an order, which was issued on August 17, 1979, and the active duty was not for training.

It is apparent that plaintiff would ordinarily be entitled to reemployment in May 1981 if he applied for such reemployment within 90 days of an honorable discharge. This is not, however, an ordinary case. In light of the extraordinary facts presented, this court holds that the Act does not entitle this plaintiff to reemployment with the Teaneck Police Department in May 1981 or at any other time.

On August 18, 1979, when plaintiff received his orders to report to active duty, he was no longer an employee of the Teaneck Police Department by virtue of his resignation which was accepted on August 8, 1979. This case is analogous to cases falling under § 2024(c) of the Act where a veteran has reemployment rights only if the order or call to active duty comes while the person is still employed by his civilian employer. For example, in *Riser v. Northern States Power Co.*, 73 CCH Labor Cases ¶ 14,265 (D.Minn.,1973) the court held that the reservist had no reemployment rights under § 2024(c) of the Act where he had quit his job three weeks before he received orders for active duty for training.

Such a conclusion is dependent on a finding that plaintiff's resignation was in fact a

bona fide and legitimate severance of his employment relationship with the Teaneck Police Department, just as the court found in *Riser* that the reservist's leaving work was a bona fide and legitimate "quit" or as the court found in *McCarthy v. M & M Transp. Co.*, 160 F.2d 322 (1st Cir. 1947) that the veteran had justifiably been discharged from his job prior to entering into active duty.

While the basic rule of law under the Act is that a resignation from civilian employment to enter military service does not deprive a veteran of reemployment rights (*see, e. g., Jennings v. Illinois Office of Education*, 83 CCH Labor Cases ¶ 10,408 at page 17,628, 101 LRRM 2300 (S.D.Ill.,1978), *aff'd*, 589 F.2d 935 (7th Cir. 1979), *cert. denied*, 441 U.S. 967, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979) and cases cited therein; *Witter v. Pennsylvania Nat. Guard*, 462 F.Supp. 299, 301 and n. 3 (E.D.Pa.1978); *Duey v. City of Eufaula, Ala.*, 87 CCH Labor Cases ¶ 11,620 at page 22,528, 102 LRRM 2898 (M.D.Ala.,1979) and cases cited therein), the special circumstances present here require a contrary result.

Plaintiff's resignation was in no way coerced by his employer.[4] *Cf. Famoudou v. Washington Metropolitan Area Transit Authority*, 89 CCH Labor Cases ¶ 12,162, 105 LRRM 3148 (D.D.C.1980). Rather, as explained by Brigadier General Amodio in his affidavit of October 21, 1980, the requirement that plaintiff resign from the Teaneck Police Department, which came exclusively from the New Jersey Army National Guard, "was a concession by the Department of Defense to plaintiff as a means of resolving a problem which plaintiff himself

had created by his misrepresentations." Plaintiff was fully aware of what he was doing when he resigned and that his resignation was considered by all concerned to be a permanent severance of his employment relationship with the Teaneck Police Department.[5] Taking all of the factual inferences most favorable to the plaintiff, the court finds that his resignation, which was accepted on August 8, 1979, was a legitimate and bona fide severance of the employment relationship and that plaintiff's receipt of orders to report for duty with the Army Corps of Engineers and his assumption of active duty did not bestow him with reemployment rights under the Act.

### b. Right to Pay for Reserve Duty

Plaintiff also claims 90 days' pay for the time he spent on reserve duty from May 1979 until August 1979. While the VRRA does not require a civilian employer to pay a reservist for the time he or she is away on reserve training duty, but only requires that it grant an unpaid leave of absence upon proper notice (*See Famoudou v. Washington Metropolitan Area Transit Authority, supra; Niemann v. Alpine-Brook-Triangle Corp.*, 69 CCH Labor Cases ¶ 12,940 (S.D.N.Y.1972); U.S. Department of Labor, *Veterans Reemployment Rights Handbook* (1970)), state law does require a leave of absence with no loss of pay for up to 90 days. *See* N.J.S.A. 38A:4–4 (West 1968). The question then is whether this court can decide the state law pay issue under the theory of pendent jurisdiction.

As the Third Circuit stated in *Lentino v. Fringe Emp. Plans, Inc.*, 611 F.2d 474 (3d Cir. 1979):

---

**4.** Plaintiff had alleged that his resignation was the result of a conspiracy between the New Jersey Army National Guard and the Teaneck Police Department but that allegation was stricken in the Pretrial Order of March 4, 1980.

**5.** Not all "permanent" resignations will deprive a veteran of reemployment rights. *See, e. g., Mowdy v. ADA Board of Education*, 440 F.Supp. 1184 (E.D.Okl.1977); *Widel v. Caterpillar Tractor Co.*, 83 CCH Labor Cases ¶ 10,605, 98 LRRM 2411 (S.D.Iowa 1978). In those cases, however, unlike the situation here, the veterans did not enter the military with the

stated purpose of pursuing totally different careers. In the case at hand, plaintiff unequivocally stated in his August 6, 1979 resignation letter "I resign as any patrolman that desires to stop working for Teaneck and start working someplace else. I can not make it any plainer than that." Plaintiff made a career choice, The fact that he selected the Army Corps of Engineers does not cloak that preference with the statutory right to revert back to the Teaneck Police Department if plaintiff is later dissatisfied with his decision.

Pendent jurisdiction, the ability of a federal court to hear a jurisdictionally insufficient claim which is linked to a jurisdictionally sufficient claim, is grounded in the interest of both the parties and the judicial system in having all of the claims between litigants both federal and state, resolved in one suit. . . .

\* \* \* \* \* \*

Federal courts have the constitutional *power* to exercise pendent jurisdiction when the state and federal claims derive from a common nucleus of operative fact, such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding, and when the federal claim has sufficient substance to confer subject matter jurisdiction on the court.

*Id.* at 478 citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

Here, plaintiff's claim for reemployment, when viewed with "reference to the pleadings, not on the facts as they may eventually be established", *id.,* alleged a substantial federal claim. Moreover, the determination of whether plaintiff is entitled to the 90 days' pay under state law is dependent on an analysis of plaintiff's retroactive resignation of August 1979. Therefore, both the reemployment claim and the pay claim arise out of a common nucleus of facts. Pendent jurisdiction, therefore, appropriately attaches to the state law pay claims.

■ While this court has found that plaintiff's resignation was a bona fide severance of employment, the retroactivity of the resignation which results in precluding the 90 day pay period presents more of a problem.[6] It is only because the resignation was made retroactive that plaintiff is being denied the 90 days' pay by the Teaneck Police Department.

If this court found the resignation's retroactivity invalid because of coercion, in the exercise of its equitable powers[7] the court still must deny plaintiff's claim for 90 days' pay. While this court cannot condone the Teaneck Police Department's consistent refusal to grant plaintiff's requests for reserve leave, the fact remains that the Police Department has done nothing unlawful. Plaintiff, on the other hand, by intentionally misrepresenting his employment relationship in order to obtain reserve duty orders comes into this court with unclean hands. *Cf. Lee v. City of Pensacola,* 634 F.2d 886 (5th Cir. 1981).

Appropriate to this case are the words of the Supreme Court in *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945):

The guiding doctrine in this case is the equitable maxim that "he who comes into equity must come with clean hands." This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. This presupposes a refusal on its part to be "the abettor of iniquity." *Bein v. Heath,* 6 How. 228, 247 [12 L.Ed. 416]. Thus while "equity does not demand that its suitors shall have led blameless lives," *Loughran v. Loughran,* 292 U.S. 216, 229 [54 S.Ct.

**6.** For example, in plaintiff's letter to Lt. Col. Wallace Price, dated August 3, 1979, he states that if he really meant to resign of his own volition, he would not have made the resignation retroactive to May 13, 1979 thus forfeiting three months' pay.

**7.** Adjudication of the retroactivity issue, governed by construction of the VRRA, is equitable in nature. *See Scott v. Atchinson, Topeka & Santa Fe R.R.,* 78 CCH Labor Cases ¶ 11,291

n. 9 (C.D.Cal.1976) for discussion of the 1940 legislative history of the Act; *Ufland v. Buffalo Courier Express, Inc.,* 394 F.Supp. 199, 201 (W.D.N.Y.1974); *Cox v. City of Kansas, Mo.,* 76 F.R.D. 459 (W.D.Mo.1978). The question under state law of entitlement to 90 days' pay is controlled by the outcome of the retroactivity question, and therefore implicates the same equitable concerns and principles as those which arise pursuant to the Act.

684, 689, 78 L.Ed. 1219], as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue. *Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240, 245 [54 S.Ct. 146, 147, 78 L.Ed. 293]; *Johnson v. Yellow Cab Co.,* 321 U.S. 383, 387 [64 S.Ct. 622, 624, 88 L.Ed. 814]; 2 Pomeroy, Equity Jurisprudence (5th Ed.) §§ 379–399.

This maxim necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant. It is "not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." *Keystone Driller Co. v. General Excavator Co., supra* [290 U.S.] 245, 246 [54 S.Ct. 147, 148]. Accordingly one's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character. Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim by the chancellor.

Moreover, where a suit in equity concerns the public interest as well as the private interests of the litigants this doctrine assumes even wider and more significant proportions. For if an equity court properly uses the maxim to withhold its assistance in such a case it not only prevents a wrongdoer from enjoying the fruits of his transgression but averts an injury to the public. The determination of when the maxim should be applied to bar this type of suit thus becomes of vital significance. See *Morton Salt Co. v. Suppiger Co.,* 314 U.S. 488, 492–494, 62 S.Ct. 402, 405–406, 86 L.Ed. 363. See also *Monsanto Co. v. Rohm & Haas Co.,* 456 F.2d 592, 598–599 (3d Cir. 1972).

It was Gary Hilliard's fraud and deceit which precipitated the controversy in issue. While it is apparent that the Teaneck Police Department's refusal to grant plaintiff's leave request was the cause of plaintiff's blatant misrepresentation on his February 1979 leave application to the NJANG, the fact that he chose to take matters into his own hands instead of seeking administrative or judicial relief undercuts his claim. Plaintiff simply has not "displayed that standard of conduct requisite to the maintenance of this suit in equity." *Precision, supra* 324 U.S. at 819, 65 S.Ct. at 999.[8]

### c. Vacation Pay

Plaintiff alleges that on at least 20 occasions the Teaneck Police Department has charged him with earned vacation while he was away on weekend drill. To the extent this is true, such action constitutes a violation of § 2024(d) of the Act.[9] As the legislative history to the precursor of § 2024(d) states, "The committee has added language intended to assure that persons who must perform active duty for training or inactive duty training will not be required to forego vacations to which they otherwise would be entitled." (1960 U.S. Code Cong. and Admin.News at 3079).

This court holds that plaintiff is entitled to reimbursement for the earned vacation time he was required to take to fulfill his National Guard responsibilities. The amount of vacation pay shall be determined on appropriate motion before this court.

---

**8.** Even if this court found that plaintiff's entire resignation was other than voluntary, it would nevertheless invoke the doctrine of "unclean hands" to deny plaintiff's claim for reemployment as well.

**9.** 38 U.S.C. § 2024(d) states, in pertinent part:

Any employee not covered by subsection (c) of this section who holds a position described in clause (A) or (B) of section 2021(a) shall upon request be granted a leave of absence by such person's employer for the period required to perform active duty for training or inactive duty training in the Armed Forces of the United States. Upon such employee's release from a period of such active duty training or inactive duty training, or upon such employee's discharge from hospitalization incident to that training, such employee shall be permitted to return to such employee's position with such seniority, status, pay, and vacation as such employee would have had if such employee had not been absent for such purposes. . . .

Parties shall submit briefs and affidavits solely on this issue within ten days.

Motions for dismissal as to the Teaneck Police Department and New Jersey Army National Guard and for summary judgment as to the individual defendants and the Township of Teaneck are granted.

Counsel for the defendants shall prepare an order in conformity with this opinion within 10 days.