United States Court of Appeals,

Fifth Circuit.

No. 96-60374.

Alvin G. SYKES, Plaintiff-Appellant,

v.

COLUMBUS & GREENVILLE RAILWAY, Defendant-Appellee.

July 21, 1997.

Appeal from the United States District Court for the Northern District of Mississippi.

Before REAVLEY, GARWOOD and BENAVIDES, Circuit Judges.

GARWOOD, Circuit Judge:

The issue presented in this appeal is whether pre-employment military service should be counted toward the four-year service limitation for eligibility under the Veterans' Reemployment Rights Act (VRRA). 38 U.S.C. former § 2024(a). Plaintiff-appellant Alvin G. Sykes (Sykes) brought this action under the VRRA seeking reinstatement to his position with defendant-appellee Columbus & Greenville Railway (C&G) together with recovery of lost wages and benefits. The parties submitted cross-motions for summary judgment. The district court entered judgment in favor of C&G on the grounds that Sykes' combined military service in excess of four years made him ineligible for reemployment rights. We reverse the district court and remand for further proceedings.

### Facts and Proceedings Below

Sykes first entered military service with the United States Marine Corps on June 2, 1982. He served two successive enlistments and received an honorable discharge on July 1, 1988. Sykes then

returned to Columbus, Mississippi, and was hired as a conductor-trainee on July 25, 1988, by C&G. Sykes remained with C&G (ultimately qualifying as a conductor) for approximately nine months. After informing C&G that he intended to reenlist in the Marine Corps, Sykes signed a letter furnished to him by C&G on April 24, 1989, stating that he was resigning his position with C&G "[e]ffective April 14, 1989" and purporting to "give up [his] contractual rights." Sykes remained on active duty from April 26, 1989, to April 25, 1993. Sykes was again honorably discharged.

On May 5, 1993, Sykes submitted an application for reemployment with C&G. His application was denied by C&G on May 9, 1993. Later that same month, Sykes attempted to assert reemployment rights under the VRRA, but C&G again refused to employ Sykes. Sykes subsequently accepted employment with the Soo Line Railroad in March 1994.

On March 29, 1995, Sykes filed this action under the VRRA in the district court below. C&G defended the suit, asserting that the cumulative total of Sykes' years in the Marine Corps made him ineligible for reemployment rights because the four-year military service limitation found in the VRRA does not distinguish between pre- and post-employment service. Additionally, C&G contended that, in any event, Sykes' execution of the resignation letter waived any rights that he may have had under the VRRA. On cross-motions for summary judgment, the district court granted C&G's motion. Finding the "plain language" of the VRRA dispositive, the district court held that Sykes' cumulative

2

military service in excess of ten years exceeded the four-year limitation period provided in 38 U.S.C. § 2024(a). At the time Sykes attempted to assert reemployment rights with C&G, his *post*-C&G military service was precisely four years. The district court did not address the merits of C&G's waiver argument.

Sykes appeals the district court's grant of summary judgment in favor of C&G. We reverse.

### Discussion

The case below was decided on cross-motions for summary judgment on the basis of undisputed material facts. This Court reviews a grant of summary judgment *de novo,* using the same standards as the district court. *Duffy v. Leading Edge Prods., Inc.,* 44 F.3d 308, 312 (5th Cir.1995). Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This Court's review of a district court's interpretations of law, whether federal or state, is plenary. *Gardes Directional Drilling v. U.S. Turnkey Exploration Co.,* 98 F.3d 860, 864 (5th Cir.1996).

I. Pre-Employment Service

The district court determined that the language of the relevant section of the VRRA clearly and unambiguously provided reemployment rights only "if the total of *any* service performed by that person after August 1, 1961, does not exceed four years." (emphasis added). The court recognized that the two cases to address the issue reached contrary conclusions. Finding the

discussion of the issue in *White v. Frank,* 718 F.Supp. 592 (W.D.Tex.1989), *aff'd,* 895 F.2d 243 (5th Cir.), *cert. denied,* 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990), controlling, the district court found unpersuasive the contrary holding in *Hall v. Chicago & E. Ill. R.R.,* 240 F.Supp. 797 (N.D.Ill.1964).

Sykes and C&G each contend that the language of 38 U.S.C. § 2024(a) is clear and unambiguous, albeit with different results. Section 2024(a) provides, in full:

> "(a) Any person who, after entering the employment on the basis of which such person claims restoration or reemployment, enlists in the Armed Forces of the United States (other than in a Reserve component) shall be entitled upon release from service under honorable conditions to all of the reemployment rights and other benefits provided for by this chapter in the case of persons inducted under the provisions of the Military Selective Service Act (or prior or subsequent legislation providing for the involuntary induction of persons into the Armed Forces), if the total of such person's service performed between June 24, 1948, and August 1, 1961, did not exceed four years, and the total of any service, additional or otherwise, performed by such person after August 1, 1961, does not exceed five years, and if the service in excess of four years after August 1, 1961, is at the request and for the convenience of the Federal Government (plus in each case any period of additional service imposed pursuant to law)." 38 U.S.C. § 2024(a).[1]

Sykes contends that the plain language of section 2024(a) makes clear that only military service performed subsequent to the employment to which VRRA rights are asserted should count towards

---

[1] 38 U.S.C. § 2024(a) was transferred and renumbered as 38 U.S.C. § 4304 pursuant to the Veterans' Benefit Act of 1992, Pub.L. No. 102-568 § 506(a), 106 Stat. 4340, 4341. The Uniformed Services Employment and Reemployment Rights Act of 1994, Pub.L. No. 103-353 § 8(a)(1), 108 Stat. 3149, amended 38 U.S.C. § 4304 extensively, but provided that the amendments would be effective "with respect to reemployments initiated on or after" October 13, 1994. The former section 4304 (which, in turn, was the former section 2024) continues to apply to reemployment actions, like that of Sykes, initiated prior to October 13, 1994.

the limitation period.  Under Sykes' reading of section 2024(a), the introductory phrase "after entering employment" limits the relevant military service to that performed post-employment;  thus, the "total of any service" language at the end of the section simply refers to this post-employment military service.  In support of his position, Sykes relies on *Hall.*

C&G contends that the phrase "total of any service, additional or otherwise" qualifies the reemployment rights set forth at the beginning of section 2024(a) and operates to bar the assertion of VRRA rights by veterans whose combined pre- and post-employment military service exceeds the four-year period.  C&G argues that the "after entering employment" language merely requires that the private employment to which reinstatement is sought precede the military service.  The district court followed this interpretation, finding the statute "clear and unambiguous."  Language in *White* supports this interpretation.

At least two district courts, the Department of Labor (DOL), and the parties to each case have disagreed as to the proper construction of section 2024(a).  The *Hall* court relied on the "history and purposes of the [VRRA]" and the *White* court found its position supported by the "face [of] the Act." We cannot say that the district court's interpretation is unreasonable.  Indeed, its interpretation may well be the *most* reasonable construction of the wording of section 2024(a).  But although we always hesitate to go beyond the plain language of a federal statute, we believe that this case presents us with an extremely rare situation where to

5

apply the statute as construed by the district court—even assuming the language of section 2024(a), parsed with the utmost grammatical propriety, to be virtually unambiguous—would lead to an absurd result. *See United States v. A Female Juvenile,* 103 F.3d 14, 16-17 (5th Cir.1996) ("Axiomatic in statutory interpretation is the principle that laws should be construed to avoid an absurd or unreasonable result"); *United States v. Mathena,* 23 F.3d 87, 92-93 (5th Cir.1994) (same); *Carpenters Dist. Council v. Dillard Dep't Stores,* 15 F.3d 1275, 1285 (5th Cir.1994) (same), *cert. denied,* 513 U.S. 1126, 115 S.Ct. 933, 130 L.Ed.2d 879 (1995); *Birdwell v. Skeen,* 983 F.2d 1332, 1337 (5th Cir.1993) (same). We therefore conclude that section 2024(a)'s service limitation applies to post-employment service only, notwithstanding the risk that such a result may not flow from "[t]he most natural grammatical reading" of the section. *See United States v. X-Citement Video, Inc.,* 513 U.S. 64, 68, 115 S.Ct. 464, 467, 130 L.Ed.2d 372 (1994). *See also McCarthy v. Bronson,* 500 U.S. 136, 139, 111 S.Ct. 1737, 1740, 114 L.Ed.2d 194 (1991) ("[S]tatutory language must always be read in its proper context."); *Crandon v. United States,* 494 U.S. 152, 156-58, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990) ("In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy."); *INS v. Cardoza-Fonseca,* 480 U.S. 421, 433 n. 12, 107 S.Ct. 1207, 1213 n. 12, 94 L.Ed.2d 434 (1987) (stating that resort to legislative history is appropriate to determine "whether there is "clearly expressed legislative

intention' contrary to that language"); *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 219-21, 106 S.Ct. 2485, 2493, 91 L.Ed.2d 174 (1986) (stating that a statute should not be interpreted inconsistently with its purpose and admonishing "not [to] be guided by a single sentence or member of a sentence, but [to] look to the provisions of the whole law, and to its object and policy") (citation omitted); *American Tobacco Co. v. Patterson,* 456 U.S. 63, 69-71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748 (1982) ("Statutes should be interpreted to avoid untenable distinctions and unreasonable results whenever possible."); *United Steelworkers v. Weber,* 443 U.S. 193, 200-02, 99 S.Ct. 2721, 2726, 61 L.Ed.2d 480 (1979) (rejecting a literal construction that would " "bring about an end completely at variance with the purpose of the statute' ") (quoting *United States v. Public Utilities Comm'n,* 345 U.S. 295, 315, 73 S.Ct. 706, 718, 97 L.Ed. 1020 (1953)); *Holy Trinity Church v. United States,* 143 U.S. 457, 458-61, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892) ("It is a familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers."); *Green v. Bock Laundry,* 490 U.S. 504, 527-28, 109 S.Ct. 1981, 1994, 104 L.Ed.2d 557 (1989) (Scalia, J., concurring) ("I think it entirely appropriate to consult all public materials ... to verify that what seems to us an unthinkable disposition ... was indeed unthought of .... "); *cf.* Stephen Bryer, *On the Uses of Legislative History in Interpreting Statutes,* 65 S. Cal. L.Rev. 845, 848-49 (1992) (discussing the "uncontroversial" use of legislative history to

avoid an "absurd result").

Under the interpretation of section 2024(a) advanced by C&G and embraced by the district court, veterans who entered civilian employment after having served in the armed forces for four or more years would be denied reemployment rights that would otherwise attach to a subsequent enlistment following their civilian employment without regard to the duration of their subsequent enlistment or the time that elapsed between their departure and subsequent demand for reinstatement, and without regard to the inconvenience, if any, to the employer. The interpretation advanced by C & G would preclude a significant portion of veterans from ever asserting reemployment rights under the VRRA upon returning to civilian life after a subsequent enlistment.[2] This result is simply incompatible with the obvious and patent purpose of the VRRA to confer quite broad reemployment rights to veterans of the United States armed services subject only to a limited restriction regarding the permissible length of post-employment service. As this four-year restriction was designed specifically to address employers' concerns about reemployment rights of indefinite duration and not to penalize veterans on the basis of their pre-employment service, we find no articulable basis for

---

[2]A recent GAO report states that the "first enlistment term of duty ... typically is 4 years." Government Accounting Office, Pub. No. B-257481, *Military Recruiting: More Innovative Approaches Needed* (Dec. 22, 1994). By statute, however, the various armed services may accept "original enlistments ... for a period of at least two but not more than six years." 10 U.S.C. § 505(c) (West Supp.1996). Accordingly, under C & G's interpretation, a service member could exceed section 2024(a)'s service limitation during his *original enlistment.*

including a veteran's pre-employment service in section 2024(a)'s limitation period.

To the contrary, the history and purpose of the VRRA, the Supreme Court's consistent admonition to interpret the VRRA's provisions consistently with its purpose to benefit veterans, the legislative history of subsequent amendments to section 2024(a), the consistent and longstanding interpretive pronouncements of the DOL, and the legislative history of the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), the VRRA's statutory replacement, all support the reading advanced by Sykes. We therefore reject C&G's "plain language" interpretation of section 2024(a) and hold that, in light of the contrary history and purpose of the VRRA discussed below, section 2024(a)'s four-year limitation period must be read to limit reemployment rights eligibility in terms of post-employment service only.

II. History and Purpose of the VRRA

In support of his reading of section 2024(a), Sykes cites *Hall's* discussion of the purpose of section 2024(a), the legislative history of several amendments to section 2024(a) since its earliest version in 1940, the general pro-veteran construction that is to be given to the VRRA, DOL handbooks and interpretive guidance, and the legislative history of the subsequently-enacted USERRA, which replaced the statutory scheme set forth in 38 U.S.C. §§ 2021-2027.

A. *Hall v. Chicago & E. Ill. R.R.* and *White v. Frank*

The district court in *Hall,* noting that one of the purposes of

9

the limitation period "might have been to deny re-employment rights to persons who entered the Armed Forces for the purpose of making Military Service a career or to those who deliberately elect not to be separated," nevertheless determined that Congress's "intention was not to penalize the patriotic employee, but rather, to relieve the employer of inconvenience and uncertainty."  240 F.Supp. at 800.  The Northern District of Illinois thus viewed the limitations period as a concession to employers who were concerned not with the prospect of long-term veterans with reemployment rights, but rather with reemployment rights of indefinite duration.[3]  Accordingly, the *Hall* court viewed the limitation period as "personal to the employer" running only against the employer as to whom reemployment rights are asserted.  Addressing (hypothetically) the precise situation at issue in this case, the court observed the "manifest injustice" that would result from deeming the limitation period to include pre-employment military service:

> "For example, a veteran who ... graduated from school, enlisted in the Armed Forces for four years, was discharged from the Armed Forces, then found his first job, and

_____

[3]As observed by Sykes, when veterans' reemployment rights were first conferred by statute in 1940, there was no prescribed limitation period.  In 1948 a three-year limitation period was imposed, Selective Service Act of 1948, 62 Stat. 604, 614-18, followed by the current, four-year period in 1951, Act of June 19, 1951, 65 Stat. 75, 86-87.  *See* also *Christner v. Poudre Valley Coop. Ass'n,* 235 F.2d 946, 949 (10th Cir.1956) ("The 1951 amendment extended those [reemployment] rights to persons who served for not more than four years."); *Smith v. Missouri Pac. Trans. Co.,* 208 F.Supp. 767, 770 (E.D.Ark.1961) ("The older [1940] statute made no reference to the time spent in military service, whether on a voluntary or involuntary basis, as bearing on reemployment rights of a returning serviceman.  The 1948 Act and subsequent Acts amendatory thereof were not silent in that regard."), *aff'd,* 313 F.2d 676 (8th Cir.1963).

subsequently re-enlisted (or was recalled to active duty) ... would never enjoy the re-employment benefits conferred by the Act. Surely Congress would not have intended to deny these individuals their reasonable expectation to re-employment following their satisfactory completion of military service by turning the limitation period in the Act into a weapon for denying such rights." *Id.* at 800.

C&G does not address the merits of the *Hall' s* decision, choosing instead to rest its argument on the grounds that *Hall* is neither controlling nor persuasive because it was not decided in the Fifth Circuit. C&G contends that *White* alone must control our analysis.

*Hall'* s determination that pre-employment military service is not included in the limitation period appears consistent with the legislative decision to accommodate employers' concerns regarding reemployment rights of indefinite duration. Correlating the duration of a veteran's reemployment rights with the length of his or her prior enlistment contracts would lead to incongruous results. For example, an employer's obligation to reemploy two veterans who terminated their employment and reenlisted on the same day would expire at different times—based not on the degree of inconvenience caused by the employees' departure, but rather based solely on service completed prior to their initial employment. Such a result could lead to precisely the type of discriminatory hiring practices now prohibited by the USERRA.[4]

*White v. Frank,* 718 F.Supp. 592, involved a thirty-year veteran of the Air Force who, upon retirement in 1984, subsequently obtained a position with the Postal Service. The veteran, Bruce

---

[4]*See* 38 U.S.C. § 4311 (West Supp.1996).

11

White (White), held the position for just under six months before he resigned to pursue another *civilian* job opportunity. *Id.* at 594. Six months after his resignation, White sought reinstatement to his former Postal Service position, but was denied. White brought an EEOC claim asserting that he was denied reinstatement on the basis of his race, color, age, and physical handicap. *Id.* The Postal Service and the EEOC denied his claims. *Id.* White subsequently filed suit in federal district court under the Age Discrimination in Employment Act (ADEA), the Rehabilitation Act, the conspiracy provisions of the Civil Rights Act, and, finally, the VRRA. *Id.*

Addressing the defendant's motion to dismiss White's VRRA claim, the district court observed that White did not even respond to the arguments that the VRRA was inapplicable. *Id.* at 597-98. The district court held that, as there was "no allegation that the Plaintiff left the Postal Service to join the military" and, in fact, White had left for a civil service position, the VRRA was "thus wholly inapplicable to this case." *Id.*

In what was plainly *dicta,* the district court went on to consider the application of section 2024(a) "even if the VR[R]A applied in theory." *Id.* at 598. As C & G notes repeatedly, the district court concluded that section 2024(a)'s limitation period includes pre-employment military service. *Id.*

That *White* 's statements concerning the application of section 2024(a) do not control the present case is obvious from the fact that White simply had no ability to assert reemployment rights in

12

the first place. The amount of his prior military service was not relevant unless he could establish that he left his position with the Postal Service to enlist (or reenlist) in the military. But White did not ever serve in the military after his Post Office employment and he did not even claim that he ever so served. The veteran in *White* would not have prevailed on his VRRA claim under either construction of section 2024(a) advanced before this Court.

Although C&G discusses at some length the obligations of this Court to adhere to its own precedent, the summary affirmance of *White* neither addressed the "theoretical" discussion of section 2024(a) nor, for that matter, any issue other than the exhaustion of administrative remedies under the ADEA. *White,* 895 F.2d at 243-44. C&G's entire argument that the Fifth Circuit adopted the district's court's *dicta* as a holding rests on the statement in the affirmance that this Court adopted the district court's holdings "without limitation." *Id.* at 243. C&G places too much emphasis on *White* 's hypothetical discussion. An alternative holding requires, at the very least, to be alternative *on the facts before, or asserted to be before, the court.* When a court makes a point or illustrates the infirmities of a particular argument by speaking to facts or circumstances that are, without dispute, not present before it, the discussion that follows, by its very nature, does not address the controversy before the court.[5]

---

[5]We do not disagree with C&G's undisputed contention on brief that " "[i]t has long been settled that all alternative rationales for a given result have precedential value.' " (quoting *Oncale v. Sundowner Offshore Servs., Inc.,* 83 F.3d 118, 120 (5th Cir.1996) (citation omitted)). Rather we simply reject C&G's hopeful

## B. Legislative History of Section 2024(a)

Sykes concedes that there is no "contemporaneous explanation of the effect on pre-employment military service," but argues that statements in the legislative history of the 1961 and 1968 amendments support his position. Sykes observes that, pursuant to the Military Training and Service Act of 1968, the legislative history restated existing law as providing that "[o]nly active military service from employment to which restoration is claimed is to be included in computing service time to determine the 4-year limitation." S.Rep. No. 1477, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.C.C.A.N. 3421, 3424 n. 2. Although C&G contends that, because the 1968 amendments were subsequent to the first enacted statute conferring veteran reemployment rights, the 1968 legislative history is of no significance, the statement was included in the section restating existing law and is some indication of congressional understanding of the VRRA. *See, e.g., Bobsee Corp. v. United States,* 411 F.2d 231, 237 n. 18 (5th Cir.1969) ("Although a committee report written with regard to a subsequent enactment is not legislative history with regard to a previously enacted statute, it is entitled to some consideration as a secondarily authoritative expression of expert opinion."). *See also United States v. Wilson,* 884 F.2d 174, 178 n. 7 (5th Cir.1989) ("[A] later Congress' understanding of the legislative intent of an earlier Congress is entitled to deference."); 2B Norman J. Singer,

---

characterization of *White* 's hypothesized situation as an alternative holding.

*Sutherland Statutory Construction* § 49.11, p. 84 (Rev. ed.1992) (same).

We find the legislative history of the 1961 amendments, however, somewhat less enlightening. The 1961 amendments, which added the August 1, 1961, date restrictions in section 2024(a), were enacted to ensure that veterans of the Korean conflict—some of whom were approaching the four-year service limitation—would be able to serve up to an additional four years. The Senate report addressed the need to extend the post-employment limitation to enable then-current service members to extend their enlistments voluntarily, but did not expressly address the issue here presented. S.Rep. No. 1070, 87th Cong., 1st Sess., *reprinted in* 1961 U.S.C.C.A.N. 3319, 3320 (noting that "[s]ome of the persons who will perform additional active duty ... have ... already served a substantial part of the 4-year period during which they have reemployment protection under existing law").

## C. Interpretive Principles

Aside from the guidance from the plain language of the statute and the legislative history, the Supreme Court has dictated that the VRRA is to be given "as liberal a construction for the benefit of the veteran as a harmonious interplay of the separate provisions permits." *Fishgold v. Sullivan Drydock & Repair Corp.,* 328 U.S. 275, 285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946). Accordingly, Sykes contends that, although VRRA reemployment rights "can be an ungainly perquisite of military service ... provisions for benefits to members of the Armed Services are to be construed

in the beneficiaries' favor." *King v. St. Vincent's Hosp.,* 502 U.S. 215, 218-20, 221 n. 9, 112 S.Ct. 570, 573, 574 n. 9, 116 L.Ed.2d 578 (1991); *see also Lee v. City of Pensacola,* 634 F.2d 886, 889 (5th Cir.1981); *Bell v. Aerodex, Inc.,* 473 F.2d 869, 872 (5th Cir.1973). We agree.

To the extent that section 2024(a) is capable of multiple interpretations, Sykes is quite correct that ambiguities should be resolved in his favor. Given the purpose of the VRRA—and the purpose of the limitation period to limit the time an employer must permit the exercise of reemployment rights—the canon of favorable construction supports Sykes' reading of the section 2024(a) limitations period as including solely post-employment military service.

## D. DOL Publications

Sykes argues that deference is owed to DOL publications that have stated consistently that pre-employment military service is not included in section 2024(a)'s limitation period. DOL Field Letter No. 20 (1961), *Veterans' Reemployment Rights Legal Guide* 163 (1964), and the 1970 and 1988 editions of the *Veterans' Reemployment Rights Handbook* all clearly support the position that pre-employment military service should not be used to determine eligibility for reemployment rights.[6]

---

[6]DOL Field Letter 20, issued in 1961, states "[o]nly military service entered from employment to which restoration is claimed is to be included in computing service time under the 4 year limitation." *Id.* at 10.

The 1964 DOL *Legal Guide* states that the service limitation was enacted for the "purpose of relieving an

16

C&G contends that DOL publications are entitled to no more deference than a writing that their attorneys might publish in support of C&G's position. C&G is incorrect. Although Congress did not explicitly leave a gap in the VRRA and expressly delegate to the DOL the authority to issue regulations concerning this issue, "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Chevron, U.S.A., Inc. v. NRDC,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). The DOL is charged with administering the VRRA. *See* 38 U.S.C.A. § 501 et seq.

---

employer from an unlimited liability to restore to his position an employee who served in the armed forces." *Id.* at 163. It goes on to state that:

"The aggregate service limitations were intended only for use by an employer as to whom the serviceman's military service interrupted an existing employment, to which the serviceman might seek restoration, and *the chargeable service was only that which interrupted this particular employment.*" *Id.* (emphasis added).

Similarly, the 1970 *Handbook* states:

"It is essential to note that these limitations apply only to active duty performed after the employee leaves the employment to which he claims restoration. Active duty performed before the employment relationship began does not count toward the years of active duty for which the employee is permitted to absent himself from the employer in question." *Id.* at 20.

When the *Handbook* was reissued in 1988, it contained the same admonition:

"These limitations apply only to active duty performed after the employee leaves the employment to which he claims restoration. Active duty performed before the employment relationship began does not count toward the years of active duty for which the employee is permitted to absent himself from the employer from whom he seeks restoration." *Id.* at 5-3.

17

Although "[n]either the [*Veterans' Reemployment Rights* ] *Legal Guide* nor the [*Veterans' Reemployment Rights* ] *Handbook* has the status of interpretive regulations, ... they do have a measure of weight." *Helton v. Mercury Freight Lines, Inc.,* 444 F.2d 365, 368 & n. 4 (5th Cir.1971) (citing *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944)); *see also Leib v. Georgia-Pac. Corp.,* 925 F.2d 240, 245 (8th Cir.1991) (noting that these publications provide " "informed guidance' " regarding the VRRA). The weight to be given these DOL publications is enhanced by the longstanding and consistent nature of the position taken, and its inception so soon after the 1961 legislation.

**E. Uniformed Services Employment and Reemployment Rights Act of 1994**

Sykes emphasizes that the USERRA's legislative history provides that "reemployment rights protection shall apply to an individual if such person's period of service, with respect to the employment relationship for which a person seeks reemployment, does not, with certain exceptions, exceed five years." H. Rep. No. 103-65, 103d Cong., 2d Sess. 17, *reprinted in* 1994 U.S.C.C.A.N. 2449, 2450. Sykes contends that this legislative history should be used to construe section 2024(a).

The USERRA legislative history quoted by Sykes, however, addresses a newly-enacted version of the reemployment rights provision which unambiguously provides:

> "(a) Subject to subsections (b), (c), and (d) and to section 4304, any person who is absent from a position of employment by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter if—

18

....

> (2) the cumulative length of the absence and of all previous absences *from a position of employment with that employer by reason of service in the uniformed services* does not exceed five years.... 38 U.S.C. § 4312(a)(2) (West Supp.1996) (emphasis added).

The newly-enacted provisions of the USERRA unambiguously provide for the precise result that Sykes contends can be derived from section 2024(a). The USERRA's legislative history's guidance on the operation of section 4312(a)(2)—which is worded differently from section 2024(a)—sheds little light on the construction of section 2024(a). Much more significant in the legislative history of the USERRA is the House Report's background discussion that states that the task force that drafted the Act intended the USERRA to be largely a clarification of existing law. H. Rep., *supra,* at 2451 (noting that the "current statute is complex and sometimes ambiguous, thereby allowing for misinterpretations"). Indeed, under the USERRA, the DOL is given the authority to promulgate regulations to resolve the textual ambiguities under the Act. *See* 38 U.S.C. § 4331; H. Rep., *supra,* at 2473 (discussing the new regulatory power and acknowledging the "measure of weight" courts have afforded statutory interpretations in the *Handbook* and *Legal Guide* ).

Although not dispositive, the legislative history of the USERRA indicates that a limited degree of deference to the DOL is appropriate and that the USERRA's provisions—which expressly adopt Sykes's position—likely were a "clarification" of existing law under section 2024(a).

## F. C&G's Abuse Argument

C&G contends that a construction of section 2024(a) that would include only post-employment military service in a determination of eligibility for reemployment rights would permit abuse of the VRRA's reemployment rights scheme:

> "[A] person could obtain private employment, quit, enlist in the military, leave the military, demand and obtain reemployment under the VRRA, quit again, reenlist in the military, leave the military, again demand and obtain reemployment under the VRRA, quit again...."

C&G's rather farfetched slippery-slope concern—one that so far as we are aware has never surfaced in actual practice, in legislative history, in administrative publications, or in relevant literature—is more than adequately addressed by the protective doctrines that both guard against abuses of veteran reemployment rights and limit employers' exposure.

For example, to qualify for reemployment rights under the VRRA, "the controlling determination is whether, regardless of the contract of employment, there was a reasonable expectation that the employment would be continuous and for an indefinite time." *Akers v. Arnett,* 597 F.Supp. 557, 561 (S.D.Tex.1983), *aff'd,* 748 F.2d 283 (5th Cir.1984). Other abuses of the VRRA are also precluded, for example, an employer need not create a position where the veteran's position no longer exists, *Horton v. U.S. Steel Corp.,* 286 F.2d 710 (5th Cir.1961), and an employer need not rehire an employee terminated for cause simply because he subsequently becomes a veteran, *Henry v. Anderson County,* 522 F.Supp. 1112 (D.Tenn.1981). Further, VRRA reemployment must be sought within ninety days from

the receipt of an honorable discharge from military service. 38 U.S.C. former § 2021(a)(2); *Leib v. Georgia-Pacific Corp.,* 925 F.2d 240, 246 n. 10 (8th Cir.1991). In short, legitimate defenses were available to C&G to challenge either Sykes's status as a permanent employee or his ability to perform his position competently. C&G neither alleged nor argued before the district court that Sykes abused the VRRA; its farfetched theoretical concerns regarding abuse of the statutory reemployment rights scheme are not present in this appeal.

III. Sykes's Resignation Letter

C&G contends that Sykes's letter of resignation waived his reemployment rights under the VRRA. In support of its argument, C&G cites *Hilliard v. New Jersey Army Nat'l Guard,* 527 F.Supp. 405 (D.N.J.1981). *Hilliard* involved a Teaneck, New Jersey police officer who was also an officer in the New Jersey National Guard. When Hilliard's repeated requests for leave to complete a special training course were denied by the Township of Teaneck,[7] he formed a sham corporation, named himself director, and, although still employed by the Teaneck police force, reapplied listing himself as self-employed. *Id.* at 407. When Hilliard's ruse was later discovered, senior officers with the New Jersey Army National Guard offered him the choice of immediately returning to his employment with the Teaneck police or resigning his position and continuing on active duty. *Id.* Hilliard signed and sent a resignation letter.

_____

[7]The New Jersey Army National Guard required public employees to obtain permission prior to entering active duty to promote comity between the Guard and local government. *Id.* at 406.

21

*Id.* & n. 2.

When Hilliard subsequently presented a claim for reemployment, the district court, observing that the general rule under the VRRA "is that a resignation from civilian employment to enter military service does not deprive a veteran of reemployment rights," nevertheless held that the "special circumstances present here require a contrary result." *Id.* at 410.

Sykes correctly argues that the "special circumstances" presented in *Hilliard*—fraud—are not present in this case. It is beyond dispute that a resignation from a civilian job, whether verbal or written, does not waive reemployment rights under the VRRA. *See Green v. Oktibbeha County Hosp.*, 526 F.Supp. 49, 54 (N.D.Miss.1981); *Bottger v. Doss Aeronautical Servs., Inc.*, 609 F.Supp. 583, (D.Ala.1985); *see also Winders v. People Express Airlines, Inc.*, 595 F.Supp. 1512, 1518 (D.N.J.1984) (stating that where an employee communicates that he is entering active military duty even the word "resign" in a communication sent to the employer cannot waive reemployment rights).

Without addressing the issue of whether a veteran has the ability to waive statutory reemployment rights prospectively by contract, we note only that Sykes's "resignation letter," prepared by C & G and ostensibly addressing seniority and contractual rights, did not even purport to do so. We see no reason to imply a waiver of Sykes's statutory reemployment rights when there is no record evidence to support such a waiver.

**Conclusion**

22

For the foregoing reasons, we REVERSE the summary judgment entered by the district court, RENDER judgment for Sykes on the issue of entitlement to reemployment under the VRRA, and REMAND to the district court for further proceedings consistent with this opinion.