**Frances JONES; Beverly Harder; Eleanor Murray; Linda Wickel; and Mary Ruane, Plaintiffs–Appellants,**

v.

**CASSENS TRANSPORT; Truck Drivers Local 299, Defendants–Appellees.**

No. 91–1211.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 15, 1992.

Decided Jan. 7, 1993.

Ellis Boal (argued and briefed), Ronald Reosti (briefed), Detroit, MI, for plaintiffs-appellants.

Marianne G. Robbins (argued and briefed), Gerry M. Miller, Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, Milwaukee, WI, George R. Geller, Farmington Hills, MI, for defendants-appellees.

Before: MERRITT, Chief Judge; MILBURN, Circuit Judge; and WELLFORD, Senior Circuit Judge.

WELLFORD, Senior Circuit Judge.

## I.

This case comes before this court for the fourth time. The pertinent part of the notice of appeal on this occasion is as follows:

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANCES JONES, et al

Plaintiffs

v.

LOCAL UNION 299

Defendant

Civil Action No 78–73078

Hon Anna Diggs Taylor

\* \* \* \* \* \*

## NOTICE OF APPEAL

Plaintiffs appeal the court's order and judgment for an entry of judgment dated December 20, 1990, to the sixth circuit court of appeals.

(The names of the attorneys for the parties are omitted). This notice of appeal brings *only* Frances Jones before us for consideration under our en banc holding in *Minority Employees v. Tennessee Dept. of Employment Security,* 901 F.2d 1327 (6th Cir.), *cert. denied,* 498 U.S. 878, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990). *See also Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988); *Mich. Corp. Council v. C.J. Rogers, Inc.,* 933 F.2d 376, 380 (6th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 585, 116 L.Ed.2d 610 (1991). We lack jurisdiction to consider the contentions of original plaintiffs Harder, Murray, Nickel, and Ruane on

this appeal under the authority of the above precedents.

## II.

The underlying facts in this case appear in full in *Frances Jones, et al. v. Truck Drivers Local Union No. 299,* 838 F.2d 856 (6th Cir.1988).[1] We concluded in that decision:

> Our concern in this case concerns the preemptive force of substantive federal law in respect to claims inextricably intertwined with the interpretation and construction of a collective bargaining agreement.

> . . . . .

> What has been set out precludes liability against the union through implementation of the merger under the terms of the existing collective bargaining agreement. To the extent that plaintiffs make a claim of the union's post-merger discrimination by way of intentionally excluding or participating in intentional exclusion of females from the other bargaining units, apart from any effort to carry over office seniority to "yard" work or to driving, they may have stated and proved a state cause of action independent of the foreclosed and preempted claims. A remand for purposes of considering that limited area of liability and potential damages in the case of qualified plaintiffs who sought such positions is accordingly directed. That claim, a direct claim of sex discrimination against the union, apart from unfair representation under the collective bargaining agreement, remains for further determination.

*Id.* at 863.

In his separate opinion in *Jones,* 838 F.2d at 864, Judge [now Chief Judge] Merritt stated the effect of our first decision:

> After the Cassens settlement, proceedings against the union continued. On appeal, a panel of this Circuit dismissed the federal claims against the union. *See Jones v. Truck Drivers Local Union No. 299,* 748 F.2d 1083 (6th Cir.1984).

1. *See also* the facts in this same case in the first appeal set out at 748 F.2d 1083 (6th Cir.1984).

The Title VII claim was dismissed because of plaintiffs' failure to file an EEOC charge against the union, and the unfair representation claim was dismissed on the statute of limitations as established by *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). This Court remanded the case to the District Judge for additional findings of fact and conclusions of law on the remaining Elliott–Larsen Act claims.

*Id.* at 865. Judge Merritt concurred with the majority view in stating further:

> The District Court erred in its construction of the merger provision. The provision itself contemplates that multiple lists could result from dovetailing. The merger provision directs that the office workers list from one company be merged with the office workers list from the other company—and that other bargaining unit lists be combined in the same way—in order to maintain the segregation of workers by their bargaining unit or job description. The contract does not envision that the event of a merger will allow office employees to do what they could not do otherwise: cross-bump less senior employees from different bargaining units.
>
> ... Custom and practice therefore reinforce the clear language of the contract provision in prohibiting office workers from cross-bumping, and the office workers had no right to bid for non-office jobs either before or after the merger.

*Id.* at 867–68.

Judge Merritt also noted that *Maynard v. Revere Copper Products, Inc.*, 773 F.2d 733 (6th Cir.1985), a case relied upon by the court's majority to find preemption, held the state law claim "to be precisely the same as federal labor law." *Id.* at 871. The plaintiffs' claim was that defendant union's alleged failure to represent their interests "was violative of state and federal law." (Count III). The charge in the complaint was, in essence, that the defendant union failed fairly to represent them because of their sex. This was in accord with the Michigan Elliott–Larsen Act, Mich.Comp.Laws § 37.2204(d), which prohibits labor organizations from: "(d) Fail[ing] to fairly and adequately represent a member in a grievance process because of religion, race, color, national origin, age, sex, height, weight, or marital status."

█ The language of the collective bargaining agreement was in conformity with the Michigan (and federal) law prohibiting sex discrimination. Both the state and federal sex discrimination laws provide that it is not unlawful to take employment actions pursuant to bona fide seniority systems that are set out in a collective bargaining system. Elliott–Larsen Act, Mich.Comp. Laws § 37.2211; 42 U.S.C. § 2000e–2(h). These employment actions may be taken even if the consequence is to recognize vested seniority rights that might have adverse effects upon females. It follows that a union's adherence to collective bargaining seniority requirements cannot constitute a failure to represent its members fairly.[2]

### III.

█ Michigan law dealing with sex discrimination on the part of a union deals with the union's duty to represent fairly and adequately its members. These laws track the requirement of the National Labor Relations Act, 29 U.S.C. § 141 *et seq.*, in imposing a duty upon unions to represent members fairly and in good faith, as pointed out in our previous decision in this case. With respect to pre-merger and merger conduct, we found that the state law claim was preempted because it was similar in language and in effect to federal labor law. Furthermore, we held that, under these circumstances, the Elliott–Larsen claim was "inextricably intertwined" with the rights found in the collective bargaining agreement. *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

---

2. As Judge Merritt expressed it in his separate opinion in 838 F.2d 856, 875: "[T]he union cannot be held liable for consequences it could not have prevented given the limitations imposed by the contract."

In an analogous case involving state law claims of discrimination under the Elliott–Larsen Act, we recently held that age and sex claims were preempted by the requirements of ERISA. *See Van Camp v. AT & T Information Systems,* 963 F.2d 119 (6th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992). In holding the discrimination claims and the "application of state law" to be preempted, we stated:

> We agree with Van Camp's contention that state laws traditionally have played a significant role in protecting citizens from age and sex discrimination. *See Shaw [v. Delta Air Lines, Inc.],* 463 U.S. [85] at 101, 103 S.Ct. [2890] at 2902 [77 L.Ed.2d 490 (1983)]. Application of the remaining two factors, however, suggest that Van Camp's claims are substantially related to an employee benefit plan, and, therefore, that the district court did not err in its determination that they were properly removed to federal court.

> Although Van Camp points out that he does not now seek reinstatement, his state-law claims are inconsistent with the retirement agreement under which he currently receives pension benefits. When Van Camp retired, he signed an agreement acknowledging that his decision to receive benefits under the enhanced pension plan was irrevocable and stating that he voluntarily retired. The effect of this agreement, one which provides that Van Camp is a voluntary retiree entitled to benefits under the ERISA plan, is the fulcrum on which resolution of this dispute turns. If Van Camp is entitled to recover on that theory that, as he claims, his retirement was forced by AT & T's age and sex discrimination and, therefore, was not voluntary, a court first would have to rule on the validity of the retirement agreement. Such a determination could be made only with reference to ERISA and would affect the existing benefit plan and the relations between Van Camp and AT & T "as principal ERISA entities." *See [Firestone Tire & Rubber Co. v.] Neusser,* 810 F.2d [550] at 556 [ (6th Cir.1987) ].

*Van Camp,* 963 F.2d at 123.

Although *Van Camp* cited *Lingle v. Norge Div. of Magic Chef,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), the Sixth Circuit held that since the state discrimination claim under Elliott–Larsen was "inextricably intertwined" with claims under federal law, it was preempted. *Van Camp,* 963 F.2d at 124. Similarly, we have held that federal labor law preempts the sex discrimination claim of plaintiff Jones under Michigan law. In a subsequent order in this case, following petitions for rehearing and plaintiffs' motion for a stay pending the decision, in light of *Lingle* we stated:

> Without expressly ruling on the motion for a stay, once *Lingle* was decided, the panel ordered the parties to submit briefs discussing the court's ability to consider *Lingle* and whether *Lingle* required a different result. In their response, the defendant-appellant stated their belief that their petition for rehearing was still pending.

> We deny plaintiff-appellees' motion to reconsider further in light of *Lingle,* after our examination of the parties' briefs regarding the panel's authority to reconsider *Lingle*'s impact on the present case.

> Judge Merritt agrees that plaintiffs-appellees' motion comes too late, although he adheres to his dissent and, if such motion had been timely, would set the case for reargument in light of the *Lingle* case.

*Jones v. Truck Drivers Local Union No. 299,* 873 F.2d 108, 109 (6th Cir.1989) (*Jones II*). We accordingly denied both parties' motions for rehearing and the motion for a stay.

Although *Lingle* did not involve a discrimination claim, it addressed whether an employee may pursue a state law retaliatory discharge claim or whether it was preempted by the LMRA, 29 U.S.C. § 185. The employee was covered by a collective bargaining agreement that provided a remedy for discharge without just cause. Citing *Lueck* with approval, *Lingle* held that:

> [I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the applica-

tion of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute.

*Lingle,* 486 U.S. at 405, 406, 108 S.Ct. at 1881, 1881 (footnote omitted). *Lingle* held that the state law claim was " 'independent' of the collective bargaining agreement for ... § 301 pre-emption purposes." *Id.* at 407, 108 S.Ct. at 1882.

Since we held previously that, in our view, pre-merger state sex-discrimination claims involved the construction of a collective bargaining agreement and its seniority provisions, we did not grant a petition for rehearing after our decision in 838 F.2d 856. The plaintiffs' petition was also viewed as untimely. That decision established the law of the case. Even though subsequent decisions of our court or of the Supreme Court may or may not cast doubt on our decision,[3] our previous holding, including the order entered of record after *Lingle* was announced, remains the law of this case. We note also that plaintiffs sought certiorari in this case after *Lingle* was decided, but it was denied. 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

## IV.

This case was remanded to the district court which permitted the parties to reopen the record for further proof. The parties instead filed cross-motions for summary judgment and the district court scheduled oral argument.[4] After hearing arguments and considering the record, the district court stated:

**3.** See *Fox v. Parker Hannifin Corp.,* 914 F.2d 795 (6th Cir.1990). *O'Shea v. Detroit News,* 887 F.2d 683 (6th Cir.1989); *Ulrich v. Goodyear Tire & Rubber Co.,* 884 F.2d 936 (6th Cir.1989) (Merritt, J.); *Smolarek v. Chrysler Corp.,* 879 F.2d 1326 (6th Cir.) (en banc), *cert. denied,* 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989). See also *United Steel Workers v. Rawson,* 495 U.S. 362, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990).

**4.** There is a question by the defendant as to the propriety of an affidavit of Stan Baker filed by plaintiffs just before oral argument.

The Sixth Circuit stated that the court may consider whether the women have a claim concerning, first of all, post-merger discrimination by the Union and the discrimination that the Union must have done, must have been intentionally discriminating by intentional exclusion from the new bargaining units, and the claim that they might, must be apart from any effort to carry over office seniority, the yard work or the driving and the claim must be apart from unfair representation under the collective bargaining agreement.

Now, under all those constraints, I do not think that they have a claim. Plaintiffs have conceded that the Union had no authority to participate in hiring of new hires by the new employer, and the women continued a claim that the meeting that was held before the merger at which seniority rights were allocated among the contestants that the old employee was the focal point of the Union's discriminatory conduct.

Applying the law of the case and upon reviewing the record, we AFFIRM.[5]

It is clear that when a case has been remanded, the trial court must upon remand proceed in accordance with the mandate and the law of the case as established by the appellate court. This is known as the law of case doctrine and operates to preclude reconsideration of identical issues.

*Petition of United States Steel Corp.,* 479 F.2d 489, 493–94 (6th Cir.), *cert. denied,* 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973) (citations omitted); *Coal Resources, Inc. v. Gulf & Western Indus., Inc.,* 865 F.2d 761 (6th Cir.1989). The plaintiff has not persuaded this court that its previous decision was erroneous.

**5.** The dissent mistakenly suggests that this court is holding that the state claim is preempted due to its factual similarity to the § 301 discrimination claim. This court determined previously, however, that the state law claim was preempted because its essence depended upon interpretation of the collective bargaining agreement. This court is bound by the law of the case in that regard.

Defendants assert that plaintiffs neither averred in their complaint nor made any showing in the district court that they were excluded from a 1976 JAC meeting which considered the merger and its consequences upon former Square Deal Cartage Co. employees. We decline to rule upon this contention in light of our previous holdings constituting the law of the case, and the conclusions of the district court upon remand, which we find are not erroneous. We have no more basis to revisit anew the issues of law determined in previous opinions and orders than we have grounds to reconsider another panel's decision in this controversy (dated April 10, 1991), overruling defendant's motion to dismiss the plaintiffs' appeal for lateness and for other procedural defects.

We AFFIRM the district court's judgment on remand.

MERRITT, Chief Judge, dissenting.

Ms. Jones has made allegations of discrimination on the part of the union which state a claim under the Elliott–Larsen Act, Mich.Comp.Laws Ann. §§ 37.2101–.2804 (1985), and which are not preempted under federal law. My view of the extent to which her claim is preempted was outlined in our previous examination of this case, *Jones v. Truck Drivers Local Union No. 299*, 838 F.2d 856 (6th Cir.1988) ("*Jones I*"), and has since been supported by the Supreme Court decision in *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). Under *Lingle*, it is clear that claims of discrimination by a union which do not require direct interpretation of the collective bargaining agreement are not preempted. Ms. Jones' allegations state such a claim.

My first area of disagreement with my colleagues arises over the issue of which aspects of this case are properly before this Court. I disagree that we have already ruled on the effects of the *Lingle* decision in our disposition of the parties' motions for reconsideration in light of *Lingle*. In our opinion denying those motions we stated:

We deny plaintiff-appellees' motion to reconsider further in light of *Lingle*, after our examination of the parties' briefs *regarding the panel's authority to reconsider* and *Lingle's* impact on the present case.

Judge Merritt agrees that plaintiffs-appellees' motion comes too late.

873 F.2d at 109 (1989) (*Jones II*) (emphasis added). The case was remanded and is back to us on appeal. We are now bound by the Supreme Court's decision in *Lingle*. The majority errs in refusing to apply *Lingle*. When the Supreme Court clarifies the law during the pendency of a case, it is hornbook law that we must apply the Court's latest interpretation.

In addition, I disagree with my colleagues regarding the scope of remand, and therefore the scope of this appeal. I noted in *Jones I* that, "I do not understand from the majority opinion what part of the plaintiffs' claims the majority is remanding for reconsideration or precisely what it expects the District Court to do on remand. I do not understand what is to be done because the Court does not make clear what part of the plaintiffs' sex discrimination claims are preempted and what part are not preempted." *Jones I*, 838 F.2d at 864. There is some language in the majority opinion implying that the lower court was limited to consideration of post-merger activity. This limitation was premised on the assumption that any claim based on pre-merger activity is preempted. *Lingle* makes it clear that this limitation is not the law.

In *Lingle*, the Supreme Court rejected the argument that a state law claim of retaliatory discharge was preempted because the state claim required a factual analysis like the analysis required to decide the § 301 contract claim based on discharge without "just cause." The Court said "we disagree with the [lower] court's conclusion that such parallelism renders the state-law analysis dependent upon the contractual analysis." *Id.* 486 U.S. at 406, 108 S.Ct. at 1881. Instead the Court clarified the narrow scope of section 301 preemption,

even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand and state law on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 preemption purposes. *Id.* at 409–410, 108 S.Ct. at 1883–84.

This holding contradicts the theory of the majority in Section III *ante*, that there is preemption of the similar language prohibiting discrimination contained in the state law. Just because a similar claim could be litigated under state law or arbitrated pursuant to the agreement does not establish preemption. As the Court in *Lingle* noted, section 301 was never intended to destroy the power of the states to provide substantive rights to workers which are not provided for by contract. *Lingle*, 486 U.S. at 411, 108 S.Ct. at 1884.

Section 301 preemption is not warranted simply because the union points to contract provisions in its defense of plaintiff's claim. The union asserts that it behaved as it did because it was bound by the collective bargaining agreement's valid seniority provision prohibiting "cross-bumping."[1] As a result, the union contends that a determination of their liability requires this court to interpret the agreement to decide whether another course of action was allowed. This argument is only valid to the extent that the union's liability is premised on its refusal to allow office workers to "cross-bump" yard and line workers, as this charge alone would require an interpretation of the agreement. But this is not the only ground for plaintiff's claim. As I stated in my earlier opinion, "No seniority plan forced the union to ignore, mislead, or segregate the female office workers." *Jones*, 838 F.2d at 808. Plaintiffs' claim includes other facts which if proved rise to the level of discrimination. Most notable among these allegations are those surrounding the meeting held in September, 1976 between the union, members of the yard and driver bargaining unit and representatives of Cassens. That meeting was never disclosed to the women, nor were they allowed to attend, even as observers. Their interests in the decisions made there were not represented by the union officials. This behavior cannot be explained on the basis of the collective bargaining agreement. Plaintiffs are not arguing that they had a contractual right to attend, but rather that general practice in the Teamsters allowed such meetings to be open. *Plaintiff–Appellants Brief on Appeal*, at 10–12. This allegation should be examined by the trial court. It does not require any consideration of the terms of the contract. These and other allegations presented by plaintiffs, if proved, are sufficient to establish a prima facie case of discrimination. Consequently, the majority is in error in refusing to apply the *Lingle* decision and in finding the Elliott–Larsen claim preempted by section 301.

---

**1.** Cross-bumping is the term used to describe a situation wherein workers from different collective bargaining units are allowed to bid for the same jobs. Under such circumstances, a worker may be bumped out of a position by a more senior worker in another bargaining unit, or "cross-bumped."