Gene **WRIGGLESWORTH**, in his capacity as Ingham County Sheriff and Ingham County, Plaintiffs/Counter–Defendants,

v.

Ellis **BRUMBAUGH**, Defendant/Cross and Counter–Plaintiff,

and

Capitol City Lodge No. 141 of the Fraternal Order of Police, a labor association, Defendant/Cross–Defendant.

No. 5:00–CV–15.

United States District Court,
W.D. Michigan,
Southern Division.

Nov. 30, 2000.

---

John R. McGlinchey, Cohl, Stoker & Toskey, PC, Lansing, MI, for Gene Wriggelsworth, in his capacity as Ingham County Sheriff, plaintiff.

Thomas A. Baird, White, Przybylowicz, Schneider & Baird, PC, Okemos, MI, for Ellis Brumbaugh, an individual, defendant.

R. David Wilson, Wilson, Lawler & Lett, Lansing, MI, for Capitol City Capitol City, Lodge No. 141 of the Fraternal Order of Police, a labor association, defendant.

## OPINION

ENSLEN, Chief Judge.

This matter is before the Court on the parties' cross-motions for summary judg-

ment. For the reasons which follow, the Court will grant summary judgment in favor of Defendant/Cross and Counter–Plaintiff Ellis Brumbaugh, Jr. and against the other parties.

## FACTS

The following facts appear from the evidence filed by the parties: Ellis Brumbaugh, Jr. enlisted in the National Guard reserves on August 19, 1968. He remained on reserve status until March 14, 1984. (Brumbaugh Deposition at 5.)

On July 5, 1971, Brumbaugh was hired by Ingham County as a Jailer II. (Brumbaugh Dep. at 16.) On January 10, 1972, he was promoted to the position of patrol officer. (*Id.*) On August 2, 1976, he was promoted to the position of detective. (*Id.*)

On March 14, 1984, Brumbaugh requested military leave from the Ingham County for the purpose of undertaking two years of active duty with the Michigan National Guard. (Plaintiffs' Exhibit 3.) This leave was granted.

On February 22, 1986, Brumbaugh requested an extension of his military leave for a period of three years. (Plaintiffs' Exhibit 5.) This extension was also granted.

In early 1989, Brumbaugh contacted Gene Wrigglesworth, Sheriff, to schedule a meeting to discuss his military status. According to Brumbaugh, his purpose in meeting was to inform Wrigglesworth that he intended to remain on military leave and to request that he be deputized as a special deputy so that he could avoid the requirement of retraining in the event of his future return to the Sheriff's Department. (Brumbaugh Dep. at 40.) On March 10, 1989, Brumbaugh met with the Sheriff.[1] At the meeting, Brumbaugh informed Wrigglesworth that he was continuing on active military duty and requested that he be deputized. (Brumbaugh Dep. at 50.) Wrigglesworth

declined to deputize Brumbaugh on the basis that he disliked special deputies. Wrigglesworth also requested that Brumbaugh sign a resignation letter that Wrigglesworth drafted at the suggestion of his attorney. (Wrigglesworth Dep. at 26–28.) Brumbaugh signed the resignation letter, which simply stated: "I the undersigned request that this be accepted as my resignation from the Ingham County Sheriff Department, effective March 13, 1988." (Plaintiff's Exhibit 9.) Brumbaugh understood that his resignation was for "administrative purposes." (Brumbaugh Dep. at 108.) He did not come to understand his statutory right to re-employment until after 1994. (Brumbaugh Dep. at 109.)

Brumbaugh remained an active duty officer of the National Guard until his honorable discharge and retirement effective September 30, 1999. At the same time, he remained an "associate" union member of the Sheriff's Department's union (Defendant Capitol City Lodge No. 141 of the Fraternal Order of Police) and paid union dues on a yearly basis. (Brumbaugh Exhibit 5.)

On January 21, 1999, Brumbaugh wrote to Wrigglesworth to request that he return to his detective assignment with no loss of seniority. (Brumbaugh Exhibit 6.) The letter was drafted after both a discussion of legal issues with Brumbaugh's attorney (John McGlinchey) and a conference as to these issues with Wrigglesworth. (*Id.*) The letter made a formal request for return to employment under the Uniformed Services Employment and Re–Employment Rights Act of 1994. (*Id.*)

Following the request, Wrigglesworth contacted the union regarding its position on reinstatement of Brumbaugh. The union responded that, under its collection bargaining agreement and under its reading of the Act, Brumbaugh had lost seniority and his right of reinstatement through

---

**1.** The parties have different recollections as to whether persons other than themselves were present at the meeting.

his resignation. (Plaintiffs' Exhibit 12.) The union did not oppose the hiring of Brumbaugh as a entry level deputy. (*Id.*) Brumbaugh reapplied to the Department and was hired as an entry level deputy. It was understood between the parties that his right to re-employment as a detective, with seniority, would be resolved through litigation and was not waived by his accepting the entry level position.

To resolve this legal dispute, Plaintiffs Gene Wrigglesworth and Ingham County filed a declaratory action in this Court on January 31, 2000 seeking a declaration that Brumbaugh had no statutory right of re-employment because of his resignation. Brumbaugh has countersued the Plaintiffs for reinstatement, back pay and attorney fees under the federal statute and a Michigan statute relating to re-employment of public employees following active military service (Mich.Comp.Laws § 35.352). He has also cross-claimed against the union. Discovery is now complete and these cross-motions for summary judgment have been filed consistent with the Court's Case Management Order. Oral hearing of these motions is, in the opinion of this Court, unnecessary and would unduly protract the resolution of these motions.

### STANDARD FOR SUMMARY JUDGMENT

These motions for summary judgment are brought pursuant to Federal Rule of Civil Procedure 56. Under the language of Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant to come forward with specific facts, sup-

ported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548.

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. *Adams v. Metiva,* 31 F.3d 375, 382 (6th Cir.1994). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548 (quoting *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505). The factual record presented must be interpreted in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Rule 56 limits the materials the Court may consider in deciding a motion under the rule: "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir.1995) (quoting Federal Rule of Civil Procedure 56(c)). Moreover, affidavits must meet certain requirements:

> [A]ffidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

Fed.R.Civ.P. 56(e). The Sixth Circuit has held "that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded." *Moore v. Holbrook,* 2 F.3d 697, 699 (6th

Cir.1993). Thus, in resolving a Rule 56 motion, the Court should not consider unsworn or uncertified documents, *id.*, unsworn statements, *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968–969 (6th Cir.1991), inadmissible expert testimony, *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1280 (6th Cir.1997), or hearsay evidence, *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir.1996); *Wiley v. United States*, 20 F.3d 222, 225–226 (6th Cir.1994).

## LEGAL ANALYSIS

### A. Federal Law Claim

Brumbaugh's federal law claim is made out under the Uniformed Services Employment and Re-employment Rights Act of 1994 (hereafter "USERRA"), Pub.L. No. 103–353, 1994 U.S.C.C.A.N. (108 Stat.) 3149, codified at 38 U.S.C. §§ 4301–33. This Act has an interesting legislative background that is pertinent to the claims in this suit.

### 1. Background

Protection of job security for armed services members is an old statutory protection which dates back to the Selective Training and Service Act of 1940. *See Trulson v. Trane Co.*, 738 F.2d 770, 772 n. 4 (7th Cir.1984). Although aspects of the statutory protection have changed through the years with the enactment of different re-employment statutes, the basic concepts and protections have largely remained unchanged. *Id.* These statutes' basic premise is that: "He who was called to the colors was not to be penalized on his return by reason of his absence from his civilian job. He was, moreover, to gain by his service for his country an advantage which the law withheld from those who stayed behind."[2] *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 284, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946).

The nature of this special protection was described in *Fishgold*, which involved a claim of returning soldier who was laid off, by use of an "escalator" analogy:

> He must be restored to his former position "or to a position of like seniority, status, and pay" .... He is thus protected against receiving a job inferior to that which he had before entering the armed services.... He shall be "restored without loss of seniority" and be considered "as having been on furlough or leave of absence" during the period of his service for his country, with all of the insurance and other benefits accruing to employees on furlough or leave of absence.... Thus he does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war.

*Id.* at 284–85, 66 S.Ct. 1105 (citations omitted). *See also Trailmobile Co. v. Whirls*, 331 U.S. 40, 67 S.Ct. 982, 91 L.Ed. 1328 (1947); *Oakley v. Louisville & Nashville R. Co.*, 338 U.S. 278, 283, 70 S.Ct. 119, 94 L.Ed. 87 (1949); and *Tilton v. Missouri Pac. R. Co.*, 376 U.S. 169, 174–75, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964). Thus, in the *Fishgold* case, the Supreme Court upheld an employer's right under a collective bargaining agreement to not rehire the returning soldier because that soldier, even with credit for his service time, did not have enough seniority to avoid the layoff under the collective bargaining agreement. As the Court said, "we would distort the language of these provisions if we read it as granting the veteran an increase in seniority over what he would have had if he had never entered the armed services." *Id.* at 285–86, 66 S.Ct. 1105. The *Fishgold* approach to seniority has been continued in USERRA, which promises re-employment and "the seniority and other rights

---

**2.** Under the present statute, the right to re-employment does not depend upon whether the military service was voluntary or involuntary, provided that the service member was not dishonorably discharged. *See* 38 U.S.C. § 4303(13) (defining "service" as including both kinds of service); 38 U.S.C. § 4304 (defining the "character of service" which is protected).

and benefits determined by seniority that the person had on the date of the commencement of service ... plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed." 38 U.S.C. § 4316(a); *see also* 38 U.S.C. § 4313(a)(2)(A).

One important change in veteran protections in the last decade relates to the length of service limitation. In 1991, in the case of *King v. St. Vincent's Hospital,* 502 U.S. 215, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991), the United States Supreme Court affirmed the judgment of the Eleventh Circuit Court of Appeals reversing a district court declaratory judgment in favor of an employer under the Veterans' Re-employment Rights Act, which was a predecessor statute to USERRA. The Supreme Court made this ruling on the basis that the statute had no time limitation to the right of re-employment such that the district court's reading of an implicit "reasonableness" time limitation into the statute was improper notwithstanding the difficulties that an unlimited statute might impose upon employers.

In 1994, Congress reacted to the decision in *King* by passing USERRA, which contains a five-year service limitation period. *See* 38 U.S.C. § 4312(c). However, to ensure that former veterans (those with orders issued pursuant to 32 U.S.C. § 502(f)) were not adversely affected by this statutory change, the Act included "transitions rules" under which those veterans would have a five-year period for service limitation purposes to file suit as to service performed after the enactment of the Act (December 12, 1994), but would have no service limitation as to service performed before the enactment of the Act, provided that the merged time periods together do not exceed five years. *See* 1996 Senate Report No. 104–371 at 34–35. These transitions rules, in other words, have the effect of limiting claims of veterans whose service began before the enactment of USERRA in that the service limitation applicable to all pre-amendment

veterans will bar claims for service extending on or after December 12, 1999.

In this suit, in light of the transition rules, the service limitation does not apply because Brumbaugh's service ended long before the December 12, 1999 limitation period. Brumbaugh also properly provided to the employer notice of his intent to return to the employment within 90 days of the end of his military service consistent with the requirement of 38 U.S.C. § 4312(e)(D).

With this background, the parties' briefs raise the following issues: Plaintiffs and the Capitol Lodge union maintain that they are entitled to summary judgment because Brumbaugh must prove that Plaintiffs acted out of a discriminatory motive in failing to re-employ Brumbaugh and that Brumbaugh cannot prove such a discriminatory intent. They argue that the evidence of record only supports the conclusion that failure to re-employ was only due to the Collective Bargaining Agreement and that this was a non-discriminatory legal basis for the action. Second, Plaintiffs and the union maintain that Brumbaugh's signature of the resignation letter given him by Wrigglesworth waives his right to re-employment under the statute. Brumbaugh disputes both of these contentions. For the ease of discussion, the Court will consider them in reverse order.

### 2. *Waiver*

These parties briefings debate the pertinent case law on the issue of when and whether a resignation waives a right of re-employment under USERRA. Pertinent cases on this issue include: *Paisley v. City of Minneapolis,* 79 F.3d 722, 725 (8th Cir. 1996); *Smith v. Missouri Pacific Transportation Co.,* 313 F.2d 676, 680 (8th Cir. 1963); *Sykes v. Columbus & Greenville Railway,* 117 F.3d 287 (5th Cir.1997); *Ryan v. Rush Presbyterian–St. Luke's Medical Center,* 15 F.3d 697, 699 (7th Cir. 1994); *Trulson v. Trane Co.,* 738 F.2d 770 (7th Cir.1984); *O'Mara v. Petersen Sand*

*& Gravel Co.,* 498 F.2d 896, 897 (7th Cir. 1974); *Loeb v. Kivo,* 169 F.2d 346 (2nd Cir.1948); *Green v. Oktibbeha County Hospital,* 526 F.Supp. 49 (N.D.Miss.1981); and *Bottger v. Doss Aeronautical Services, Inc.,* 609 F.Supp. 583, 587 (D.Ala.1985).

The above cases indicate, at a minimum, that a waiver of re-employment rights under USERRA (as well as its predecessor statutes) must be clearly expressed to be effective. They differ, however, in the extent to which they require clarity as to the waiver of the statutory rights. Eighth Circuit cases such as *Paisley* and *Smith* regard a general statement of resignation (*i.e.,* "I resign") as sufficient to waive the statutory right of re-employment. However, the other cases and especially the *Sykes* and *Loeb* decisions do not treat a general statement of resignation as effective in waiving the statutory right of re-employment. Rather, those cases indicate that a waiver of statutory rights requires at least an awareness of the statutory right and an expressed intent to waive the right (*i.e.,* "I understand my right to re-employment under USERRA and I voluntarily waive that right"). *See Loeb,* 169 F.2d at 349. Indeed, the *Sykes* decision and some of the other decisions cited question whether an employee can voluntary waive the right to re-employment in the context of leaving the employment for military service. There is reason to question, at least in the ordinary case, whether an employee can waive re-employment rights in the context of leaving employment for military service. The statute is intended to protect those rights and is "at war" against those employers who would seek to undercut the right of re-employment by sliding a resignation form across the table to the employee who has opted for military service. In such a scenario, no important societal or contract interest is served by honoring the "resignation." The "resignation" is not truly contractual in nature in that the employee receives no consideration for his "agreement" to resign the employment and to forfeit valuable rights of re-employment. Moreover, allowing such "resignations" to be effective, would undercut the effectiveness of the statute by allowing employers to take advantage of the youth and ignorance of some of those enlisting in military service to waive a valuable right of re-employment for no appreciable reason from the employee's prospective.

■ Given that the federal courts and especially the United States Supreme Court have expressed a clear preference for liberally interpreting this statute in favor of veterans, *see Fishgold v. Sullivan Drydock & Repair Corp.,* 328 U.S. 275, 284–85, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946); *Coffy v. Republic Steel Corp.,* 447 U.S. 191, 196, 100 S.Ct. 2100, 65 L.Ed.2d 53 (1980), this Court must now interpret the statutory right as not waived under the circumstances of this case. In this case, the employee, Brumbaugh, expressed rather clearly at the time of resignation an intent to return to the Sheriff's Department. He did not prepare the resignation letter himself. He signed it, only after it was prepared by the Sheriff, and at the request of the Sheriff for "administrative purposes." The resignation itself makes no mention of the statutory right of re-employment and provides no consideration for the waiver by Brumbaugh of his statutory right of re-employment. Accordingly, the Court determines as a matter of law that the right of re-employment was not waived under the circumstances of this case.

### 3. Proof of Discrimination

This leaves the discussion at the first issue raised by Plaintiffs—whether Section 4312 of Title 38 of the United States Code (a section of USERRA) requires proof of an intent to discriminate against the returning veteran and whether the proof of that intent is sufficient on this record to warrant relief as a matter of law. Plaintiffs urge that intent to discrimination must be proven under the Sixth Circuit Court of Appeals decision in *Curby v. Archon,* 216 F.3d 549 (6th Cir.2000). They also urge that a decision not to re-employ

Brumbaugh because of the treatment of his resignation under the collective bargaining agreement is not discriminatory in violation of the statute—citing both *Curby* and *Jones v. Cassens Transport,* 982 F.2d 983 (6th Cir.1993). This argument requires the Court to consider the statutory language, its legislative history, its administrative interpretation, and pertinent case precedents.

### a. Statutory Provisions

Title 38 United States Code Section 4311, which was codified as part of USER-RA, provides in pertinent part as follows:

(a) A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, re-employment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

(b) An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter. The prohibition in this subsection shall apply with respect to a person regardless of whether that person has performed service in the uniformed services.

(c) An employer shall be considered to have engaged in actions prohibited—

(1) under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service; or

(2) under subsection (b), if the person's (A) action to enforce a protection afforded any person under this chapter, (B) testimony or making of a statement in or in connection with any proceeding under this chapter, (C) assistance or other participation in an investigation under this chapter, or (D) exercise of a right provided for in this chapter, is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such person's enforcement action, testimony, statement, assistance, participation, or exercise of a right.

(d) The prohibitions in subsections (a) and (b) shall apply to any position of employment, including a position that is described in section 4312(d)(1)(C) of this title.

38 U.S.C., § 4311.

Title 38 United States Code Section 4312, which was codified as part of USER-RA, provides in pertinent part as follows:

(a) Subject to subsections (b), (c), and (d) and to section 4304, any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter if—

(1) the person (or an appropriate officer of the uniformed service in which such service is performed) has given advance written or verbal notice of such service to such person's employer;

(2) the cumulative length of the absence and of all previous absences from a position of employment with that employer by reason of service in the uniformed services does not exceed five years; and

(3) except as provided in subsection (f), the person reports to, or submits an application for reemployment to, such employer in accordance with the provisions of subsection (e) . . . .

(d)(1) An employer is not required to reemploy a person under this chapter if—

(A) the employer's circumstances have so changed as to make such reemployment impossible or unreasonable;

(B) in the case of a person entitled to reemployment under subsection (a)(3), (a)(4), or (b)(2)(B) of section 4313, such employment would impose an undue hardship on the employer; or

(C) the employment from which the person leaves to serve in the uniformed services is for a brief, non-recurrent period and there is no reasonable expectation that such employment will continue indefinitely or for a significant period.

(2) In any proceeding involving an issue of whether—

(A) any reemployment referred to in paragraph (1) is impossible or unreasonable because of a change in an employer's circumstances,

(B) any accommodation, training, or effort referred to in subsection (a)(3), (a)(4), or (b)(2)(B) of section 4313 would impose an undue hardship on the employer, or

(C) the employment referred to in paragraph (1)(C) is for a brief, nonrecurrent period and there is no reasonable expectation that such employment will continue indefinitely or for a significant period,

the employer shall have the burden of proving the impossibility or unreasonableness, undue hardship, or the brief or non-recurrent nature of the employment without a reasonable expectation of continuing indefinitely or for a significant period. . . .

(g) The right of a person to reemployment under this section shall not entitle such person to retention, preference, or displacement rights over any person with a superior claim under the provisions of title 5, United States Code, relating to veterans and other preference eligibles.

(h) In any determination of a person's entitlement to protection under this chapter, the timing, frequency, and duration of the person's training or service, or the nature of such training or service (including voluntary service) in the uniformed services, shall not be a basis for denying protection of this chapter if the service does not exceed the limitations set forth in subsection (c) and the notice requirements established in subsection (a)(1) and the notification requirements established in subsection (e) are met. 38 U.S.C. § 4312.

Section 4316 further provides that a veteran whose period of service was more than 180 days who was re-hired in accordance with Section 4312 shall not be discharged by an employer except for "cause" within "one year" of the date of re-employment. 38 U.S.C. § 4316(c). Section 4304, which is incorporated as part of Section 4312 by provisions of Section 4312, also states that a service member's "entitlement to the benefits of this chapter by reason of the service of such person in one of the uniformed services terminates upon" the person's separation from the service with a "dishonorable discharge" or "under other than honorable conditions." 38 U.S.C. § 4304.

■ This statutory language scheme demonstrates two separate and distinct statutory protections. Section 4311 provides a statutory protection for not only service members but also to persons who have provided testimony to benefit a service member. The nature of this statutory protection is a protection against discrimination which is predicated upon a showing that a discriminatory motive was a "motivating factor" for an adverse employment action. Section 4312, however, is a very different statutory protection in that it creates a limited entitlement to re-employ-

ment for certain qualifying service members. This entitlement applies only to returning service members under conditions specifically stated in the statute, especially including that the service members provided notice of his military service at the time he left the employment, that the length of service did not exceed the service limitation, that the service member requested re-employment within the time limits provided for under subsection (e), and that the character of the service was as described in Section 4304 (*i.e.,* not dishonorable service). Section 4312 neither contains nor implies a proof of discrimination requirement. Section 4311 also does not suggest that its requirements are applicable to Section 4312. The statutory wording is clear and is to be enforced even without resort to legislative history, agency interpretation and case precedents. *See Palmer v. United States,* 219 F.3d 580, 583 (6th Cir.2000) (stating that federal courts are required to enforce unambiguous statutes according to their terms).

Furthermore, the wording of other federal statutes which refer to USERRA dictate this same conclusion. Section 1316 of Title 2 of the United States Code states that it was enacted to insure to the veteran-employees of the General Accounting Office and the Library of Congress the same rights protected by USERRA and it lists separately the Section 4311 protection against discrimination, the Sections 4312 and 4313 right of re-employment, and the Sections 4316 to 4318 rights to employee benefits. Similar wording as to veteran-employees occupying Article I (presidential) employment is found at Title 3 United States Code Section 416.

### b. *Legislative History and Agency Interpretation*

Indeed, this very distinction in the statutory purposes between Section 4311 and 4312 is evident from the legislative history of USERRA. As to the purpose of Section 4311, the legislative history says as follows:

Section 4311(a) would reenact the current prohibition against discrimination which includes discrimination against applicants for employment, (*see Beattie v. The Trump Shuttle, Inc.,* 758 F.Supp. 30 (D.D.C.1991)), current employees who are active or inactive members of Reserve or National Guard units, current employees who seek to join Reserve or National Guard units (*see Boyle v. Burke,* 925 F.2d 497 (1st Cir.1991)), or employees who have a military obligation in the future such as a person who enlists in the Delayed Entry Program which does not require leaving the job for several months. *See Trulson v. Trane Co.,* 738 F.2d 770, 775 (7th Cir. 1984). The Committee intends that these anti-discrimination provisions be broadly construed and strictly enforced. The definition of employee, which also includes former employees, would protect those persons who were formerly employed by an employer and who have had adverse action taken against them by the former employer since leaving the former employment.

If the employee is unlawfully discharged under the terms of this section prior to leaving for military service, such as under the Delayed Entry Program, that employee would be entitled to reinstatement for the remainder of the time the employee would have continued to work plus lost wages. Such a claim can be pursued before or during the employee's military service, and processing of the claim should not await completion of the service, even if for only lost wages.

Section 4311(b) would reaffirm that the standard of proof in a discrimination or retaliation case is the so-called "but for" test and that the burden of proof is on the employer, once a prima facie case is established. This provision is simply a reaffirmation of the original intent of Congress when it enacted current section 2021(b)(3) of title 38, in 1968. *See* Hearings on H.R.11509 Before Subcommittee No. 3 of the House Committee on Armed Services, 89th Cong., 1st Sess. at 5320 (Feb. 23, 1966). In 1986, when Congress amended section 2021(b)(3) to

prohibit initial hiring discrimination against Reserve and National Guard members, Congressman G.V. Montgomery (sponsor of the legislation and Chairman of the House Committee on Veterans Affairs) explained that, in accordance with the 1968 legislative intent cited above, the courts in these discrimination cases should use the burden of proof analysis adopted by the National Labor Relations Board and approved by the Supreme Court under the National Labor Relations Act. *See* 132 Cong.Rec. 29226 (Oct. 7, 1986) (statement of Cong. Montgomery) citing *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983). This standard and burden of proof is applicable to all cases brought under this section regardless of the date of accrual of the cause of action. To the extent that courts have relied on dicta from the Supreme Court's decision in *Monroe v. Standard Oil Co.*, 452 U.S. 549, 559, 101 S.Ct. 2510, 69 L.Ed.2d 226 (1981), that a violation of this section can occur only if the military obligation is the sole factor (*see Sawyer v. Swift & Co.*, 836 F.2d 1257, 1261 (10th Cir.1988)), those decisions have misinterpreted the original legislative intent and history of 38 U.S.C.2021(b)(3) and are rejected on that basis.

Section 4311(c) makes explicit that the anti-retaliation provisions contained in the reported bill apply to persons who not only file a complaint, either with his or her employer (*see Henry v. Anderson County, Tenn.*, 522 F.Supp. 1112, 1115 (E.D.Tenn.1981)), or with a governmental agency, but applies as well to persons who testify in any proceeding under chapter 43, even if that person was not the subject of the proceeding, and to persons who assist or otherwise participate in an investigation under chapter 43, even if those persons were not the subject of the investigation. Accordingly, a person protected under this section need not be a member of the uniformed services.

Uniformed Services Employment and Reemployment Act of 1994, H.R.Rep. No. 103–65, 103rd Cong., 1st Sess.1993, 1994 U.S.C.C.A.N. 2449, 2456–57 (1994).

This same House Report makes clear that the purpose of Section 4312 was to provide an automatic right of re-employment different from the right described in Section 4311:

> Section 4312(a) would provide an unqualified right to reemployment to persons who leave other than temporary positions to serve on any type of military duty, whether voluntary or involuntary, if the notice requirement of subsection (a)(1) is met, the cumulative length of military service found in subsection (a)(2) is not exceeded and the reporting or application requirement of subsection (e) is complied with. This section applies with equal force to employers of private employees, state and local governments and the Federal Government. The only other exceptions to the unqualified right to reemployment would be the provisions in subsection (d), which provide that the employer need not reemploy the person if the employer's circumstances have so changed as to make it impossible or unreasonable to reemploy or, in the case of a person not qualified after reasonable efforts, if reemployment would create an undue hardship.

> The very limited exception of unreasonable or impossible, which is in the nature of an affirmative defense, and for which the employer has the burden of proof (*see Watkins Motor Lines, Inc. v. De Galliford*, 167 F.2d 274, 275 (5th Cir. 1948); *Davis v. Halifax Cty. Sch. System*, 508 F.Supp. 966, 969 (E.D.N.C. 1981)), is only applicable "where reinstatement would require creation of a useless job or where there has been a reduction in the work force that reasonably would have included the veteran." *Davis, supra*, 508 F.Supp. at 968.

*Id.* at 2457–58. The legislative history also confirms that the escalator rule announced

in *Fishgold* was intended to be continued and strengthened through the wording of the statute. *Id.* at 2463–64.

Thus, the legislative history confirms the view of Brumbaugh that in enacting Section 4312 Congress intended to legislate a right of re-employment separate from the right against discrimination enacted as part of Section 4311 and that this entitlement does not depend on proof of discrimination.

Furthermore, this interpretation has been adopted by the Department of Labor in its advice to veterans concerning their statutory rights. (*See* Brumbaugh Response Brief, Exhibit 3—Dept. of Labor Fact Sheet.) The interpretation of the Secretary of Labor is entitled to deference in the absence of an interpretation that is arbitrary, capricious, or manifestly contrary to the statute. *See Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In this case, because the agency interpretation is consistent with the statutory language, legislative history and long-held judicial precedents, it is worthy of deference.

### d. Case Precedents

Notwithstanding the statutory language and legislative history, Plaintiffs and the Defendant union make arguments concerning case law and especially the Sixth Circuit Court of Appeals' decision in *Curby v. Archon,* 216 F.3d 549 (6th Cir.2000), which stated in part that a returning service member must prove discrimination under Section 4312.

As noted by Brumbaugh, this interpretation of the statute by the *Curby* Court is *dicta* in that the *Curby* Court justified its decision on other grounds before considering the interplay between Sections 4311 and 4312 of Title 38 of the United States Code. Furthermore, the Court distinguishes the *Curby* case as involving very different facts (*i.e.,* an employee fired due to gross misconduct amounting to "just cause" for termination under 38 U.S.C. § 4316(c)) and determines that the com-

ments in *Curby* as to the interplay of Sections 4311 and 4312 are not controlling. It is worthy of notice that the long history of litigation under the predecessor statutes to USERRA, including many decisions by the United States Supreme Court, have determined that the Act protected the unqualified right of a veteran to re-employment upon proof of advance notice to the employer of the military service, proof that the service limitation is not exceeded, and proof that a timely request for re-employment is made (provided that the service was honorable and that the employer did not establish a specific statutory defense). There is no reason to now read the statute as imposing requirements not legislated by Congress.

■ Notwithstanding, the Court determines that regardless of whether proof of a "motivating factor" is required to establish Brumbaugh's right of re-employment, that there is sufficient proof of a motivating factor as a matter of law on the present record. Plaintiffs claims that they have only abided by the Collective Bargaining Agreement and have not taken their action for any reason apart from the Collective Bargaining Agreement—such that Brumbaugh cannot prove a discriminatory act in violation of the statute. Plaintiffs cite in favor of their argument not only the case of *Curby v. Archon,* 216 F.3d 549 (6th Cir.2000), wherein a police department did not re-employ a returning police officer because of misconduct committed prior to his military service, but also the case of *Jones v. Cassens Transport,* 982 F.2d 983 (6th Cir.1993). In *Jones,* the Sixth Circuit Court of Appeals held that Title VII/Elliott–Larsen Act claims for sexual discrimination in the workplace failed where the basis for the claims were the effects of a bona fide collective bargaining agreement seniority system.

Both the *Cassens* and *Curby* decisions are inapposite. In the present case, Brumbaugh was assigned his "collective bargaining status" because of a resignation

which was ineffective in waiving his statutory rights and which was solicited by the employer. It is simply subterfuge to pretend, in this scenario, that the resignation and collective bargaining agreement are the legitimate, non-discriminatory reasons for not re-employing the returning veteran. Were this the case, the employer could simply contract around provided statutory benefits to returning veterans. Indeed, this very argument has been rejected as a matter of law in previous cases. First of all, the Supreme Court's decision in *Fishgold* made clear that a employment decision denying re-employment rights cannot be cloaked in the language of a collective bargaining agreement. *Fishgold* determined that an employee is not entitled to different treatment under a collective bargaining agreement once he was given seniority credit for his service time. However, it also made clear that the employee cannot be denied his place on the "escalator" because of military service. This aspect of *Fishgold* is retained in the current statutory language of USERRA.

Thus, in the case of *Waltermyer v. Aluminum Co. of America,* 804 F.2d 821 (3d Cir.1986), the Fifth Circuit held that the fact that a collective bargaining agreement limited bonuses to those working in a given time period did not absolve the company from paying those bonuses to reservists temporarily away on military leave. The *Waltermyer* decision, and several cases cited therein, observed that to permit this kind of distinction in a collective bargaining agreement would contradict the statutory requirement of equal treatment.

Furthermore, the Fourth Circuit Court of Appeals heard a nearly identical type of argument in *Rudisill v. Chesapeake & Ohio Ry. Co.,* 167 F.2d 175, 178–9 (4th Cir.1948). It then considered whether a collective bargaining agreement which limited the rights of those resigning from the company could be enforced against a returning veteran who had resigned. It held both that the resignation was ineffective (because prompted by military service) and that the collective bargaining agreement treatment of resigning workers did

not justify denial of the statutory right of re-employment to the veteran. *Id.* As it said in denying that argument:

> The Railway Company makes the additional contention that the plaintiff may not be legally restored to his old position or to a 'position of like seniority, status and pay,' because at the time of his resignation he was a member of the Order of Railway Telegraphers which had a contract with the Railway Company that provides that the seniority rights of a member shall be lost upon resignation, according to the interpretation placed upon the contract by the Union. The answer to this argument is clearly given by the Supreme Court in *Fishgold v. Sullivan Drydock & Repair Corporation,* 328 U.S. 275, 285, 66 S.Ct. 1105, 1111, 167 A.L.R. 110, 90 L.Ed. 1230, where in considering the seniority rights conferred upon a returned veteran by the statute the court said:

>> This legislation is to be liberally construed for the benefit of those who left private life to serve their country in its house of great need. *See Boone v. Lightner,* 319 U.S. 561, 575, 63 S.Ct. 1223, 1231, 87 L.Ed. 1587. And no practice of employers or agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act. Our problem is to construe the separate provisions of the Act as parts of an organic whole and give each as liberal a construction for the benefit of the veteran as a harmonious interplay of the separate provisions permits. (Italics supplied.)

*Rudisill,* 167 F.2d at 179 (quoting *Fishgold* ).

For all of these reasons, the Court concludes as a matter of law that Brumbaugh has proved his entitlement to the relief sought under federal law as a matter of law. For the same reasons, Plaintiffs and the union are not entitled to relief.

### B. State Law Claim

Brumbaugh has also claimed benefits under a parallel Michigan statute providing public employees a right to re-employment upon return from military service—Michigan Compiled Laws Section 35.351 *et seq.* The Michigan statute provides in pertinent part that a public employee who leaves his public employment, voluntarily or involuntarily, to perform military service and who makes application to return to the employment within 90 days of the time that he is relieved or discharged from his duty under honorable conditions shall be restored to his original position or otherwise to a position of like seniority, status and pay and shall be regarded as having continuously worked during his military service. *See* Mich. Comp.Laws §§ 35.352 and 35.353. The statute was drafted in 1951 and parallels the federal legislation of the time.

As to the Michigan statute, Plaintiffs argue that the Court lacks authority to address the pendent law claim because the state statute assigns jurisdiction a claim for relief to the "circuit court for the district in which such public employer is located...." Mich.Comp.Laws § 35.355. The argument is, in other words, that the state statute has defeated federal pendent jurisdiction by limiting jurisdiction to the Michigan state courts.

■ This very argument has been rejected for over one hundred years both by the United States Supreme Court and lower federal courts. The reason for rejecting such an argument is obvious. Were the federal courts limited in their exercise of diversity and supplemental jurisdiction by state statutes assigning a state forum, then the exercise of that jurisdiction, as contemplated by Congress and the Framers of the Constitution, could be frustrated in a manner inconsistent with the preeminence of federal law. As the Supreme Court has wisely stated:

"Whenever a general rule as to property or personal rights, or injuries to either, is established by State legislation, its enforcement by a Federal court in a case between proper parties is a matter of course, and the jurisdiction of the court, in such case, is not subject to State limitation."

*Railway Company v. Whitton,* 13 Wall. 270, 80 U.S. 270, 286, 20 L.Ed. 571 (1871). *See Mullen v. Academy Life Ins. Co.,* 705 F.2d 971, 975 (8th Cir.1983); *TBK Partners Ltd. v. Western Union Corp.,* 675 F.2d 456, 460 n. 3 (2d Cir.1982); *Duchek v. Jacobi,* 646 F.2d 415, 418–19 (9th Cir. 1981); *Miller v. Perry,* 456 F.2d 63, 64 (4th Cir.1972); *Hayes Ind., Inc. v. Caribbean Sales Associates, Inc.,* 387 F.2d 498, 500 (1st Cir.1968); *Akin v. Louisiana National Bank of Baton Rouge,* 322 F.2d 749, 759 (5th Cir.1963); *Holt v. King,* 250 F.2d 671, 675 (10th Cir.1957); *Hibbs v. Yashar,* 522 F.Supp. 247, 250–51 n. 1 (D.R.I.1981); *Rubel–Jones Agency, Inc. v. Jones,* 165 F.Supp. 652, 654 (W.D.Mo.1958). *See also Czajkowski v. Jovanovich,* 28 F.3d 105, 1994 WL 247089 (9th Cir.1994) (unpublished decision); *Graham v. Holiday Inns, Inc.,* 1986 WL 15783 (W.D.Tenn.1986) (unpublished decision). Accordingly, the Court determines that the state statute's designation of the state circuit court as the forum for grievances under the statute does not defeat federal jurisdiction as to this pendent state law claim.

■ Plaintiffs also argue that the state statute *requires* that the state court action be brought by the Michigan Attorney General as a condition for relief to be granted and that this requirement is not met. This argument derives from the statutory language that:

"Upon application to the attorney general by any person claiming to be entitled to the benefits of such provisions, the attorney general, if reasonably satisfied that the person so applying is entitled to such benefits shall appear and act as attorney for such person...."

Mich.Comp.Laws § 35.355. Plaintiffs cite no legislative history nor court precedent to support their construction of the statute. The Court believes that their construction is simply wrong. This statute is

intended to benefit veterans and should be construed to their benefit. The reference to the attorney general appears from the statutory language to provide veterans with a right of legal representation should they elect to apply to the attorney general. The statute does not appear to require veterans to apply for this representation as a condition for relief. Rather, it simply leaves veterans the option of whether to seek state representation or private representation in pursuing their statutory rights. Accordingly, the Plaintiffs' argument is rejected as inconsistent with the statutory language.

■ This brings the legal discussion to the issue of liability. Plaintiffs argue that they cannot be liable under the statute because the statute contains a three-year service limitation—unlike the federal statute described above. *See* Mich.Comp. Laws § 35.351(f). As to this argument, Plaintiffs also overlook pertinent statutory language. In describing the "three year service limitation," the Michigan legislature further stated: "And provided further, That if the re-employment provision of the selective service act is amended to provide a period of other than three years, such a period provided by the selective service act shall apply." The purpose of this provision is make state law consistent with federal law by providing that the federal service limitation, if different, shall apply. Applying this statutory language, since the federal statutory limitation is different from three-years (as more particularly described above), the federal limitation applies. Under the federal limitation, as stated above, the request for re-employment was timely notwithstanding the length of Brumbaugh's service.

■ Furthermore, as to liability generally, Michigan's statute was interpreted by the Michigan Supreme Court in the case of *Borseth v. City of Lansing*, 338 Mich. 53, 61 N.W.2d 132 (1953). There, the Michigan Supreme Court held that the fact that Borseth had separated himself from the City by a resignation rather than by a request for a leave of absence was insignif-

icant. Despite the resignation, Borseth was entitled to re-employment at his previous position with credit for his service. *Id.* In light of the Michigan Supreme Court's construction, the statutory language and its similarity to the language and purpose of the federal statute, the Court determines that Baumbaugh is also entitled to an summary judgment on his state law claim.

### CONCLUSION

Accordingly, partial summary judgment shall be entered in favor of Defendant Brumbaugh and against Plaintiffs/Counter–Defendants determining that Brumbaugh is entitled to summary judgment as a matter of law as to liability in that his rights under USERRA and under Michigan law (Michigan Compiled Laws Section 35.351 *et seq.*) were violated by the Plaintiffs' failure to rehire him at the detective rank, pay, benefits and perquisites. However, because of the failure of the parties to address in their motion practice the issue of damages and equitable relief, a final judgment cannot yet be entered. *See Shelby County Health Care Corp. v. Southern Council of Industrial Workers Health and Welfare Trust Fund*, 203 F.3d 926, 932 (6th Cir.2000) (holding that it is error to award damages on summary judgment when issue was not briefed.)

Since this case has not been fully resolved by the motion practice to date, the Court will further order that all parties shall *either*, pursuant to Federal Rule of Civil Procedure 56(d), file further legal memoranda, with supporting evidence, within 14 days on the issue of whether there are genuine issues of material fact as to the award of equitable remedies and the amount of monetary damages recoverable in this suit, *or* submit a stipulation as to the amount of damages and equitable remedies. In the event of the filing of legal memoranda, all parties shall respond to the other legal memoranda within 14 days of filing. Upon completion of the briefing or the filing of the stipulation, the Court

will determine whether a final judgment may be summarily entered as a matter of law.

Partial Judgment shall enter consistent with this Opinion.

### *PARTIAL JUDGEMENT*

In accordance with the Court's Opinion of this date;

**IT IS HEREBY ORDERED** that the Plaintiffs/Counter–Defendants Motion for Summary Judgment (Dkt. No. 33) is **DENIED** and Defendant Ellis Brumbaugh's Motion for Summary Judgment (Dkt. No. 34) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Court determines as a matter of law, pursuant to Federal Rule of Civil Procedure 56(d), that the Plaintiffs are not entitled to the declarations of law sought by them and that Plaintiffs/Counter–Defendants are liable to Defendant/Counter–Plaintiff Ellis Brumbaugh as to both his federal and state law counterclaims.

**IT IS FURTHER ORDERED** that, since this case has not been fully resolved by the motion practice to date, all parties shall *either,* pursuant to Federal Rule of Civil Procedure 56(d), file further legal memoranda, with supporting evidence, within 14 days on the issue of whether there are genuine issues of material fact as to the award of equitable remedies and the amount of monetary damages recoverable in this suit, *or* submit a stipulation as to the amount of monetary damages and the appropriateness of the remedies sought. In the event of the filing of legal memoranda, all parties shall respond to the other legal memoranda within 14 days of filing. Upon completion of the briefing or the filing of the stipulation, the Court will determine whether there are genuine issues of material fact warranting trial or whether judgment should be entered based on evidence filed together with the Court's findings of this date.